## HENRY KOCH *vs.* NUTTER J. WIMBROW et al.

*Correction of Docket Entries by Order Nunc Pro Tunc—Harmless Error in Exclusion of Evidence—Proof of Lost Document—Evidence as to Market Price—Refusal of Buyer to Accept Goods at Time Specified in Contract—Request for Postponement of Delivery—Instructions.*

When the Clerk of the Court fails to make an entry showing that the plaintiff joined issue on certain pleas, the trial Court is authorized to pass an order, after an appeal is taken, directing such entry to be made, *nunc pro tunc,* when that Court is satisfied that the docket entries as they stood were erroneous or incomplete.

If there was error in making such correction, and issue was not in fact joined on the pleas, the appellant should have excepted to the order, or in some other way made objection thereto, in order to raise the question on appeal.

A party is not injured by the exclusion of parol evidence of the contents of a written contract which was filed as an exhibit with certain depositions and afterwards lost, when a duplicate of the contract, in the possession of the other party, was admitted in evidence, and the instructions to the jury were based upon it.

When one of the questions in the case is whether the defendant had written a certain letter to the plaintiff, a letter from the plaintiff's attorney to the defendant, stating that he had a communication from the defendant to the plaintiff, is admissible in evidence.

The testimony of a wholesale dealer as to the market price of canned goods at a particular time is admissible.

After proof of the loss of a letter, the testimony of a witness who had read it is admissible to prove its contents.

When the buyer refuses to accept the goods at the time specified in the contract for their delivery, the seller is not obliged to ship them, or to make an offer to deliver, but may treat the buyer's refusal as a rescission of the contract, and the buyer has no right afterwards to demand delivery.

Plaintiff agreed to purchase from the defendant 1,000 cases of tomatoes by a contract which provided for shipment in the early part of the canning season, one car to be shipped as soon as packed, and the other later. On August 22nd, when defendant had the first carload nearly ready for shipment, plaintiff wrote, asking him not to ship until the goods were wanted, and that he would let defendant know when to make the shipment. Plaintiff's evidence was that he received no reply to this letter, and that on September 24th he wrote asking defendant to ship a carload of the goods, to which defendant replied that the contract had been cancelled by plaintiff's refusal to receive the goods according to the agreement. Defendant's evidence was that he replied to plaintiff's letter of August 22nd, by saying that he would hold the tomatoes for the plaintiff, if they were then paid for, otherwise he was ready to ship according to contract, and that plaintiff had replied by saying that he would not pay for the tomatoes in advance and would not receive them at that time if shipped. This letter the defendant testified had been lost, but he offered secondary evidence of its contents. The contract price of the tomatoes was 77½ cents per dozen. In August the price was 70 cents, and in September about 90 cents per dozen. *Held,* that the jury was properly instructed at the instance of the defendant in an action for breach of contract, that if they found the facts offered in evidence by him, then their verdict should be for the defendant.

*Held,* further, that a prayer offered by the plaintiff was properly rejected which instructed the jury that he was entitled to recover if they found that he was ready and willing to perform his part of the contract, when the tomatoes were shipped and received by him, and that he was prevented from doing so by the defendant's failure to deliver and ship.

*Decided June 29th, 1909.*

Appeal from the Circuit Court for Worcester County (HOLLAND, J.).

*Plaintiff's 1st Prayer,* after setting forth the contract, instructed the jury that if they shall further believe from the evidence that the defendants, upon their part, failed, neglected and refused to deliver and ship to the plaintiff the said tomatoes in the manner and at the time or times stipulated in said written contract of sale, and shall also believe that the plaintiff was ready and willing to comply with the terms and conditions of the said contract of sale, upon his part to be performed, then the verdict of the jury must be for the plaintiff. (*Granted.*)

*Plaintiff's 4th Prayer.*—That there is no evidence in this case legally sufficient to show any valid legal waiver by the plaintiff of the terms of the contract of June 2nd, 1906, as to the time of deliveries mentioned therein, nor of any valid legal agreement or arrangement whereby the plaintiff released the defendants from making the deliveries called for by said contract at the times mentioned in said contract. (*Rejected.*)

*Plaintiff's 6th Prayer.*—If the jury shall find that the plaintiff was ready and willing to perform his part of the contract of sale when the tomatoes purchased by him were shipped and received by him, according to the stipulations of said contract, such as paying the freight and purchase money for the same, and that he was prevented from so doing by the defendant's failure to deliver and ship said tomatoes, then their verdict must be for the plaintiff. (*Rejected.*)

*Plaintiff's 10th Prayer.*—The jury are instructed that, notwithstanding the tomatoes sold by the defendants to the plaintiff were, by the contract offered in evidence in this case, to be delivered and shipped to the plaintiff in the "Early part of the canning season, one car to be shipped as soon as packed and the other later," if the jury shall find that the plaintiff wrote and sent to the defendants on the

22nd day of August, 1906, the letter offered in evidence of that date in which the plaintiff stated, "We have bought one thousand cases of tomatoes from you. Kindly do not ship them until we want them. We will let you know when to ship them," and shall further find that the defendants did not deliver and ship to the plaintiff the tomatoes within the time or times stipulated by said contract, and that they failed to reply to and disapprove of the request made in regard to shipping the tomatoes, contained in plaintiff's said letter, and that they failed to deliver and ship the tomatoes to the plaintiff requested in plaintiff's letter of September 24th, 1906, offered in evidence, and shall find that by reason of said failures and defaults, the defendants thereby waived (if such waiver was necessary under the terms of said contract) all objection they may have had to enlarging the time or times for the delivery and shipping of the said tomatoes, then their verdict must be for the plaintiff. (*Rejected.*)

*Defendants' 1st Prayer.*—If the jury find from the evidence that the defendants contracted with Koch & Co. to sell them 1000 cases of tomatoes of 2000 dozen, at 77½ cents as stated in the sold note offered in evidence by the plaintiff, of the packing of 1906, to be shipped in the early part of the season, f. o. b. Whaleyville, and one car load to be shipped as soon as packed and the other later, and that the season commenced about August the 10th, and closed about October 10th, and that the first packing by the defendants was about August 22nd or 23rd, and the defendants were ready and willing to ship said carload and had it packed for that purpose, and that on the 22nd of August the plaintiff wrote to the defendant not to "ship them until we want them," which letter was received by the defendants. "We will let you know when to ship them," and further find that the defendants replied that they would hold the goods and store them at the plaintiff's risk, if he would pay for them in advance, otherwise that they were ready to ship according to their contract, and further find that the plaintiff replied he would not pay in advance, and would not receive the goods if

shipped then. The defendants were not bound to ship the goods or any part thereof, and that they had the right to consider the said refusal as a cancellation of said contract, and their verdict must be for the defendants. (*Granted.*)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*A. P. Barnes,* for the appellant.

*John H. Handy,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment rendered in favor of the defendants (appellees) in a suit by the appellant for an alleged breach of contract to deliver to him one thousand cases of tomatoes, each case containing two dozen cans three pounds standard tomatoes. The terms of sale were "77½ c. per doz. f. o. b. Factory, 13½ c. rate of freight guaranteed to Newark, N. J., goods to be of packing of 1906; shipment in early part of canning season; Swells guaranteed to July 1, 1907, packers labels. One car to be shipped as soon as packed and the other later. Terms cash, less 1½ c. in 10 das." The sale note is dated June 2nd, 1906.

There were five common counts and a special count in the declaration. To the first five counts the general issue pleas were filed and to the sixth the general issue plea, one alleging that the plaintiff had countermanded the order and another that the plaintiff refused to accept the goods when offered by the defendants according to the terms of the contract. The plaintiff joined issue on the other pleas and traversed the second and the third filed to the sixth count. A note in the record shows that the defendants joined issue on them, but the appellant complains that that entry was made after the appeal was entered—under a *nunc pro tunc* order of the Court. As there is nothing in the record showing any exception or objection to that action of the Court, or any

proceeding taken which would authorize us to review such action, it is unnecessary to discuss it, but we will add that in *Greff* v. *Fickey,* 30 Md. 75, it was held, where a writ of diminution had been issued for the purpose of having some alleged errors corrected, that it was "the duty of a Court, when satisfied either from its own knowledge of what actually occured in a cause, or from evidence adduced, that the docket entries as made by the clerk are erroneous or incomplete, to have them corrected; so that a full, true and perfect transcript of the whole proceedings as they actually occurred in the progress of the cause may be sent to the appellate Court in obedience to the writ of diminution." In that case, as in this, the term in which the proceedings had occurred had passed, and as it was not only within the power but the "plain duty" of the Court to have the errors corrected, if satisfied there were errors in the docket entries, the appellant would have no ground for complaint, even if he had properly brought the question here for review. As this record had not yet been transmitted to this Court, the correction was not made under a writ of diminution, but as it was distinctly held in *Greff* v. *Fickey* that it could have been, of course the appellant was not injured by it being done as it was, instead of the appellees waiting until the record came to this Court and then applying for the writ. If the issue was not in fact joined, and the plaintiff was injured thereby, it should have been brought to the attention of the Court by some appropriate proceeding.

The first exception was taken to the ruling of the Court in excluding from the jury the portion of the deposition of the plaintiff which gave the terms of the contract, the affidavit of the stenographer who took the deposition and the certificate of the Notary Public before whom it was taken that the contract was offered in evidence and filed as an exhibit but had been lost. Without stopping to consider the proper way to establish the contents of an exhibit filed with depositions, which is afterwards lost and not returned with the depositions, it is not perceived how the appellant was in-

jured. The appellant called one of the appellees as a witness and a duplicate of the contract which was held by the appellees was admitted in evidence, at the instance of the plaintiff, and there is nothing in the record from which we can see that the plaintiff was prejudiced by this action of the Court. The contract was set out in the narr., the duplicate corresponds with it, and it was not denied by the defendants that it was the contract made by the parties. The part of the deposition which was excluded is not set out in the record, excepting by reference to it as "that part of the deposition of Mr. Koch which gave the terms of an alleged contract," which might indicate that the plaintiff had undertaken to give the terms of this written contract, but, however, that may be, the contract is set out in full in the plaintiff's first prayer, which was granted, and the case was tried by both sides on the theory that that was the contract made between the parties.

A letter from Mr. Greenfield, attorney for the plaintiff, was offered by the defendant, to which "the plaintiff objected on the ground of its incompetency and irrelevancy under the issues in this cause." The Court overruled the objection and permitted it to be read and used as evidence. That ruling is presented by the second bill of exceptions and we find no reversible error in it. The letter began by saying that the plaintiff had referred to him the communications of the defendants addressed to the plaintiff. If admissible for no other reason, it was to show that he said: "I note that in one of your letters you state that he cancelled the order. This my client emphatically denies. He asked you to hold off the shipment for a short time and I have your communication to him in which you agree to do so and to ship when required. Therefore there can have been no cancellation of the order and if you still refuse to ship we will hold you responsible." The plaintiff had offered in evidence a letter he had sent to the defendants, dated August 22nd, 1906, as follows: "Gentlemen—We have bought one thousand cases of tomatoes from you. Kindly do not ship them until we want them. We will let you know when to ship them"—also one dated

September 24, 1906, which read: "Kindly ship us one car of tomatoes and oblige." He also offered a reply to that letter dated September 25th, 1906, in which the defendant says: "Your favor received, and in reply beg to quote you tomatoes at $1.00 per doz.—f. o. b. Whaleyville, cash with order. Your previous order was cancelled about 30 days ago when you refused to receive them, the tomatoes, according to contract."

The plaintiff had testified that he did not know of any reply to his letter to the defendants of August 22nd and on cross-examination was asked: "Have you produced all the correspondence that passed between you and the Wimbrow Bros. about this 1000 cases of tomatoes?" To which he replied, "I think so." Nutter J. Wimbrow, one of the defendants, testified that they commenced packing sometime in August—"I guess we commenced may be about the 10th day of August;" that they received the letter of August 22nd the day they finished packing 500 cases, and answered it the day he received it as follows: "Your favor received, and in reply beg to say that we will hold these tomatoes for you, if you will send us a check in payment for them. We will then store them at your risk and expense, otherwise we are ready to ship them immediately according to contract." He then testified that they received a reply to that letter which they had lost and could not find, but it was in substance as follows: "That he would not send us a check in payment for these tomatoes in advance, neither would he receive them if we shipped them consigned to H. Koch & Co." An employee of the defendants also testified to having seen a letter of that purport.

One of the material questions which arose in the case was as to that correspondence—the position of the plaintiff being that there was no such correspondence and no reply to his letter of August 22nd. Several of the plaintiff's prayers offered relied on the failure of the defendants to reply to or disapprove of the letter of August 22nd. The letter of Mr. Greenfield admits that he had a "communication" as he calls

it, which was a reply to that letter, for it is not pretended that the plaintiff asked the defendants "to hold off the ship-ment for a short time" except through that letter. Although Mr. Greenfield's letter shows the contents of the communica-tion to be just the opposite from what Mr. Wimbrow testi-fied, it also shows that there was an answer to the letter of August 22nd which the plaintiff denied. The letter was only objected to "on the ground of its incompetency and irrelev-ancy" but for the reasons we have stated we think it was competent and relevant. It was doubtless admitted when it was, although originally rejected, because in the meantime the defendants had offered evidence to show that Mr. Green-field was attorney for the plaintiff in this case, when the depositions were taken in Newark, New Jersey.

Nor do we see any objection to the testimony of Mr. Ruark, presented by the third bill of execptions. Although he was not conversant with the tomato packing business, he was in the wholesale grocery business, dealt in tomatoes and testified as to the market price in August—saying that sev-enty cents was the market price the latter part of August and later the price went up to eighty-five cents. That evidence showed a motive for the plaintiff not wanting to get the tomatoes the latter part of August, and as, according to the testimony offered by him, the price had risen in October to a point beyond what he was to pay for them, the evidence of Mr. Ruark reflected upon the controversy between the parties, as to what was done the latter part of August. If tomatoes were only worth seventy cents when the defendants received the letter of August 22nd, it was not so likely that the de-fendants would agree to postpone the delivery to the plain-tiff, who was to pay 77½ cents, as if they were worth the contract price or more. Business is not generally conducted in that way.

The fourth bill of exceptions contains the ruling as to the admissibility of the evidence of Walter Whaley, who worked for the defendants and was allowed to testify as to the con-tents of the letter alleged to have been received from the

plaintiff in response to the reply of the defendants to the letter of August 22nd. He said they had packed five hundred cases of tomatoes and when he went to inquire about shipping them, he was shown the letter. The plaintiff objected to the testimony without the production of the letter. It had already been proven to be lost, and of course could not be produced. Under such circumstances the contents of the letter were admissible.

This brings us to the last bill of exceptions which embraces the rulings on the prayers. The plaintiff offered thirteen, all of which were rejected excepting the first and second, and the defendant offered three, two of which were granted. The exception states that: "The plaintiff excepted to the ruling of the Court in not granting his rejected prayers; and specially excepted to the granting of the defendant's first prayer, on the ground of the legal insufficiency of the evidence to support this prayer."

We do not deem it necessary to discuss all these prayers separately. The first of the plaintiff, which was granted, went as far as the plaintiff could ask, and perhaps further than he was entitled to. After submitting to the jury to find that the defendant sold the tomatoes as set out in the contract of June 2nd, it continued: "and shall further believe from the evidence that the defendants, upon their part, failed, neglected and refused to deliver and ship to the plaintiff the said tomatoes in the manner and at the time or times stipulated in said written contract of sale, and shall also believe that the plaintiff was ready and willing to comply with the terms and conditions of the said contract of sale, upon his part to be performed, then the verdict of the jury must be for the plaintiff." With the defendant's first prayer which was granted the jury may have been sufficiently instructed to prevent being misled, but unless it had understood that the plaintiff's prayer was qualified by the defendants,' as judging from its verdict it probably did, there was great danger of the jury ignoring the defence set up by the appellees.

The plaintiff's second prayer, as granted, instructed the jury as to the measure of damages in as broad terms as he could desire, and without passing on all of the others separately, we are of opinion that plaintiff has no cause to complain. We would add that as to the fourth, fifth and seventh specially referred to in the brief, there was ample evidence, as we have seen, tending to prove not only that the plaintiff relieved the defendants of the obligation to furnish the tomatoes as contemplated by the contract, but a refusal by the plaintiff to accept the tomatoes at the time provided for in the contract. If it be true, as one of the defendants testified, that the plaintiff refused to pay for the tomatoes, if the defendants held them for him beyond the time the contract contemplated payment, and also said he would not receive them if the defendants shipped them to him, then the defendants were under no obligation to ship them and had the right to treat the contract as abandoned by the plaintiff. A party to a contract for the sale of such goods as tomatoes has no right to refuse to accept them as provided in the contract and then afterwards, when there is a rise in the market, demand delivery at the contract price. The testimony of the defendants tended to show that if the plaintiff had accepted the tomatoes as the contract called for, they could have made a fair profit, but when the plaintiff afterwards demanded them they would have sustained considerable loss, if they had then furnished them. It is true that the contract only provided for one car being shipped as soon as packed (which was about August 23rd) and the other later, but the plaintiff could not refuse to accept and pay for the one carload and then require the defendants to deliver the other when he saw fit to demand it. Without deeming it necessary to cite authorities, the case of *Lawder Co.* v. *Mackie Grocery Co.,* 97 Md. 1, reflects on some of the questions involved.

There was undoubtedly evidence to support the statements in the prayer of the defendants and the questions of fact

were submitted to the jury as fully as the plaintiff could ask. It follows from what we have said that the judgment must be affirmed.

> *Judgment affirmed, the appellant to pay the costs, above and below.*