# JAMES DUTTON

## *vs.*

# STATE OF MARYLAND.

*Arraignment of person accused of crime*: not necessary in case
of misdemeanors; felonies, what are; attempted rape. no
felony.   Criminal trials: publicity; testimony must be
taken in presence of the accused; propounding
question why sentence should not be pronounced.
Rape: and attempted rape; punishment by
death; not "cruel or unusual pun-
ishment." Docket entries: cor-
rection.  Judgments:
striking out.

Where the docket entries in the trial court, and as appear-
ing in the record, sent to the Court of Appeals, do not properly
present the facts, a writ of diminution may be issued, and the
trial court, upon motion made, may have the docket entries
corrected by having the proper changes made.           p. 376

The action of the trial court in directing such changes so to
be made is final, and not open for review.              p. 376

The action of the trial court in overruling a motion for a
new trial is not subject to review by the Court of Appeals.
                                                        p. 378

But the action of the court in striking out judgment and
sentences is reviewable on appeal.                      p. 378

In such a case the Court of Appeals is confined to what ap-
pears on the face of the record itself; and a bill of exceptions,
or an agreed statement of facts, can not be substituted therefor.
                                                        p. 378

An assault with intent to commit robbery, murder or rape, is not a felony or an "infamous crime," but is a misdemeanor.

pp. 378, 380

Only those crimes are felonies in Maryland which were such at common law or are declared by statute to be such.     p. 378

The fact that a crime is punishable by death *or confinement in the penitentiary,* or is "infamous," does not make it a felony in Maryland.                                        p. 378

A traverser accused of a misdemeanor need not be arraigned in court; but it is indispensable that a plea should be entered to the indictment or that the record should show that he waived a plea.                                        p. 380

When the rules of court do not mention the time within which limits alone a motion for a new trial or a motion in arrest of judgment may be made, the time allowed by common law will apply.                                        p. 381

In general, a motion to strike out a judgment after sentence may be made at any time within the term.                p. 382

If sentence should be passed upon a traverser before the expiration of the time for a motion for a new trial or a motion in arrest, such motion may be made thereafterwards, provided it be made within the time allowed.                p. 381

Before passing sentence on a traverser, failure to propound the question as to whether the traverser has anything to say why sentence should not be passed, only affects the sentence, even in capital cases, and does not affect the verdict, and is not a reversible error.                                p. 383

But the practice of propounding such a question in capital cases or in cases where the punishment may be confinement in the penitentiary is recommended.                        p. 383

The penalty of death, under sec. 17 of Art. 27 of the Code, as amended by Ch. 366 of the Act of 1908, for an assault with intent to commit rape, is not in violation of Article 16 of the Declaration of Rights, prohibiting cruel and unusual punishment.                                        p. 385

A criminal trial should not be so conducted as to have the appearance of "Star Chamber" proceedings; but cases some-

times occur which may have a demoralizing effect on spectators, and to some extent upon the community, and in such cases, even out of regard for the interest of the accused, the trial may be conducted with less publicity than usual.                    p. 387

Where for reasons of that sort, and with the consent of the traverser's attorney, a criminal trial was held in the petty jury room instead of in the public court room, this of itself was held to furnish no ground for a reversal.                    pp. 388-389

But to take testimony in a criminal proceedings out of the presence of the accused is reversible error.                    p. 389

*Decided June 24th, 1914.*

Appeal from the Circuit Court for Dorchester County (STANFORD and JONES, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Thomas W. Simmons,* for the appellant.

*W. Calvin Trice* and *Edgar Allan Poe, the Attorney-General,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant was convicted of an assault with intent to rape, and was by virtue of section 17 of Article 27, Code of Public General Laws, as amended by Chapter 366 of Acts of 1908, sentenced to be hung. The record originally transmitted to this Court was defective, but on application of the appellant a writ of diminution was ordered. The appellant then applied to the lower Court to have the record in that Court corrected, so as to have what occurred properly stated. In *Greff* v. *Fickey,* 30 Md. 75, after a writ of diminution was issued by this Court, for the purpose of having

some alleged errors in the record corrected, a motion was made to have the docket entries in the lower Court amended and completed, but that Court overruled the motion because it was of opinion that the term having passed, and the Court of Appeals having ordered that the docket entries be returned as they actually stood upon the docket, it would be improper to grant the motion. This Court, through BARTOL, C. J., said: "We think the learned judge was in error as to the purport and design of the writ, and his powers and duty in the premises. If satisfied either from his own knowledge of what had actually occurred in the progress of the cause, or from evidence adduced, that the docket entries as made by the clerk were erroneous or incomplete, it was within his power and his plain duty to have them corrected, so that a full, true and perfect transcript of the whole proceedings as they actually occurred in the progress of the cause might be sent up, in obedience to the writ." That course was also approved in *Hays* v. *P., W. and B. R. Co.,* 99 Md. 413, and *Koch* v. *Wimbrow,* 111 Md. 21.

The lower Court accordingly very promptly and properly granted the motion of the appellant in this case, and has made certain corrections which we will insert in this opinion, so that it may be seen how the record now stands,—the action of that Court in reference to the changes requested being final and not subject to review on appeal. *Greff* v. *Fickey, supra.* By an order in writing signed by the two judges who sat below, the clerk was directed to and did make the changes, additions and corrections in the docket entries and record, so as to now read as follows:

> "Plea and traverse. Whereupon the said James Dutton, traverser, cometh to the bar of the Court here in his proper person, and forthwith being demanded concerning the premises in said indictment above specified and charged upon him, how he will acquit himself thereof, he waived arraignment and he said, 'Not Guilty,' and 'Traverse before the Court,' and the said V. Calvin Trice, Esquire, State's Attorney

of Dorchester, aforesaid, who for the said State of Maryland in his behalf prosecuteth, doth the like.

"That the consent of the attorneys for the State and for the traverser having been first given, thereupon the trial in this case was adjourned to and held in the petit jury room, immediately adjoining the court room proper, including the taking of all testimony, and the same being taken in the presence of the Court, the Clerk with his docket and other Court officers, the said attorneys for the State and traverser, and all witnesses, but without the presence of said traverser during any part of the testimony of the chief prosecuting witness, Margaret Gillis, who testified while said traverser was in said adjoining court room, with the door of communication closed, and in custody of the Sheriff, except for the interval when said traverser was brought to said communicating door then opened, and identified by said witness, the said door being immediately thereafter closed until said witness left the stand and the traverser brought into said petit jury room to testify in his own behalf, where he then remained until the conclusion of said trial.

"The Court, having heard evidence, thereupon directed the Clerk of the Court to enter in the proceedings in said case, 'The Court finds the party guilty.'

"Sentence. Whereupon all and singular the premises being seen, and by the Court fully understood, it is thereupon considered by the Court that James Dutton, prisoner at the bar, be taken to the jail of Dorchester County from whence he came, and from thence to the place of execution," etc.

A motion for a new trial was made "short" the day the appellant was sentenced (November 14th, 1913), and on November 18th a formal motion in writing was filed. On December 23rd that motion was overruled, and on January 24th, 1914, which was during the same term of Court, a motion to strike out the judgment and sentence was made, which was overruled, and this appeal was taken to this Court.

That the action of the Court in overruling the motion for a new trial is not subject to review by us is too well settled to require or justify the citation of authorities, but its action on the motion to strike out the judgment and sentence is reviewable by us. The ruling on such a motion was reviewed by us in *Hommer* v. *State,* 85 Md. 562, and other cases which might be cited, but we are confined to what appears on the face of the record itself, and there is no bill of exceptions, agreed statement of facts, or substitute for either of them. We will consider the questions referred to in the motion, but in somewhat different order from that in which they are therein stated.

1. Objection is made that the appellant was not arraigned. An assault with intent to rob, murder or commit a rape is not a felony in this State. The punishment for those crimes is provided for in one section of the Code, and has been for many years—being now section 17 of Article 27. In *Hollohan* v. *State,* 32 Md. 399, it was said, "Robbery, murder and rape are felonies. To constitute either of these crimes, the felonious *act* and felonious *intent* must concur. An assault with intent to commit either of these crimes is not a felony, but to bring an assault within this Article and section and subject the party charged to the punishment provided, it must be charged and proved to have been committed with an *intent* to commit a crime, which is a felony. If the intent had been effectuated by the act, a felony would have been committed. Only because it was not effectuated, the crime sinks from the grade of a felony to that of misdemeanor." See also *State* v. *Dent,* 3 G. & J. 12.

The distinction made in some jurisdictions that crimes punishable by death or confinement in the penitentiary are felonies, and others misdemeanors has never existed in this State, but here only those are felonies which were such at common law, or have been so declared by statute. The fact that a crime is punishable in the penitentiary or is "infamous" does not make it a felony in this State. It was said in *State* v. *Bixler,* 62 Md. 360: "The General Court of this

State in 2 H. and McH. 378 (*Clarke's Lessee* v. *Hall*), defined 'infamous crime' to be one which rises at least to 'the grade of felony.' This is, however, too narrow, for perjury is a misdemeanor, but by all authority is 'infamous.' " On the same page it is also said: "There are many misdemeanors punishable by confinement in the penitentiary, which clearly are not 'infamous crimes' within the meaning of the common law or of the Constitution. If, for example, the prisoner has been convicted of any of the assaults with intent, mentioned and punished by the Code, and had been sentenced to the penitentiary and served his time out there, without being pardoned by the Governor, he would not be chargeable with having committed 'an infamous crime.' " In *Garritee* v. *Bond*, 102 Md. 379, JUDGE SCHMUCKER, in delivering the opinion of the Court, referred to the case of *Ex Parte, Wilson,* 114 U. S. 422, where the Supreme Court held that the provision in the United States Constitution which prohibits prosecution for "a capital or other infamous crime unless on a presentment or indictment of a Grand Jury" must be considered not merely from the standpoint of the character of the crime, but also from the nature of the consequences to the accused, if he should be found guilty, and went on to say: "But even in *Wilson's case* it was held that at common law prior to the Declaration of Independence 'it was already established law that the infamy which disqualified a convict to be a witness depended upon the character of his crime and not upon the nature of his punishment.' " Again it was there said: "The authorities generally, though not with entire uniformity, hold that the infamous nature of a crime was determined at common law by the character of the act itself, and not by the penalty inflicted for its commission," and after referring at length to *State* v. *Bixler, supra,* it was distinctly held that the crime considered in *Garritee* v. *Bond* could not be regarded as infamous merely because it was punishable at the discretion of the Court in the penitentiary.

So whatever may be the law elsewhere, it is clear that an assault with an intent to commit a rape is not a felony and is not even an "infamous crime" as that term is understood in this State. It is not now and never has been so far as we are aware customary or necessary to arraign one accused of a misdemeanor—even though if convicted he could or must be punished by confinement in the penitentiary. The Legislature in authorizing the Court, in its discretion, to impose the death penalty or confinement in the penitentiary for not less than two nor more than twenty years on one convicted of the crime of assault with intent to commit a rape, did not declare it to be a felony, and in our judgment did not make it such by providing for the death penalty in the discretion of the Court. In *Gibson* v. *State,* 54 Md. 447, the first count charged that the accused *"feloniously,* wilfully and maliciously did set fire to and burn a certain barn," etc. One ground for a motion in arrest of the judgment was "Because the jury have found him guilty of a felony and the offense committed is only a misdemeanor by the laws of Maryland." In the course of the opinion it was said: "The argument of the Attorney-General, that the offense charged in the first count is legally a felony, because the common law attached the character of felony to all offenses punishable by death, however well founded according to the English authorities, does not apply to offenses where the punishment of death is in the discretion of the Court, and this Court having decided, in *Black* v. *State,* 2 Md. 376, that such offenses are misdemeanors; we are not disposed to disturb that decision." In *Salfner* v. *State,* 84 Md. 299, Chief Judge McSherry said: "It is unnecessary that a party accused of a misdemeanor should be arraigned; but it is indispensable that a plea should be entered to the indictment or that the record should show he waived a plea."

So without deeming it necessary to further discuss this branch of the case, or to refer to authorities out of the State as to when the accused must be arraigned, we hold that it

was not necessary to arraign the appellant, and there was no error in not doing so, and hence the effect of a waiver of arraignment becomes immaterial.

2. The reason alleged that the defendant never, either in person or by his attorney, pleaded the plea of "Not Guilty" which appears in the docket entries—it having been entered without the order or authority of the defendant or his attorney, and without his having been called upon to plead,—is not sustained by the record. We have quoted above what the record states on that subject, and as it shows that he did plead "Not Guilty," and as there is nothing in conflict with that statement, it is unnecessary to further discuss the question.

3. Another reason assigned in support of the motion is that sentence of death was pronounced against the defendant without first asking him if he had anything to say. The authorities are not entirely uniform on the subject, although it may be admitted that the greater number of them hold that at least in capital cases the accused should be asked if he had anything to say why sentence should not be pronounced. The question has not heretofore been passed on by this Court, and we have no statute on the subject, as many States have. There can be no doubt that most of the reasons originally given for the adoption of that practice are not applicable in this State. In the first place the prisoner is not only allowed counsel, but the Courts always appoint counsel to defend those who are unable to employ them, in capital cases. Again, the rules of Courts generally fix the time within which a motion for a new trial or motion in arrest of judgment can be filed, and in the absence of such rules, the time allowed at common law is applicable. Even if sentence should be passed before the expiration of such time, without having given the prisoner an opportunity to then speak, such a motion would be afterwards entertained if made within the time allowed. In *Heiskell* v. *Rollins,* 81 Md. 397, a judgment was entered by the clerk in a civil case the day the verdict was rendered, and on the same day a motion for a

new trial was filed. We dismissed the appeal without preju-
dice, in order that the appellant could take steps to have the
entry of judgment which was improperly entered stricken
out and a final judgment then entered from which an appeal
could be taken. The case was here on a second appeal, as
reported in 82 Md. 14. Such a practice being adopted in
a civil case, the Court would be all the more careful to see
that a prisoner under the sentence of death did not suffer by
reason of a premature judgment and sentence.

Then under our practice a motion can be made to strike
out the judgment and sentence at any time during the term,
as was done in this case. It would be practically impossible
for the prisoner to suffer from this omission because he de-
sired to present a pardon. If a pardon had been granted by
the Governor before sentence, it is impossible to conceive of
a case under our system and practice, in which the Court
could fail to be informed of it, because of the omission to
ask the prisoner whether he had anything to say. So we
might look to the various reasons originally given for this
practice, without finding a substantial one under existing
conditions for setting aside a judgment and sentence in a
criminal case because of the omission of this inquiry.

The decisions of the various Courts which hold that omis-
sion to be reversible error differ as to the effect of such an
error, but even if we were inclined to hold that it was indis-
pensable in capital cases to ask the prisoner if he had any-
thing to say, we would not hestitate to hold that the error
would only affect the sentence and would not affect the ver-
dict. In *State* v. *Hoyt*, 47 Conn. 518, one of a number of
reasons given by that Court for declining to hold it to be nec-
essary, was that it would only affect the sentence and the
weight of authority is to that effect. But in this State we
have a statute (Sec. 81 of Art. 5 of Code) which provides
that if this Court shall reverse a judgment for error in the
judgment or sentence itself, it shall be then the duty of this
Court to "remit" the record to the Court below, in order
that it may pronounce the proper judgment. In this case a

motion for a new trial was made and overruled, as was the
motion now under consideration, and it would seem peculiar,
to speak mildly, if the rules of practice required us to re-
verse the judgment and send it back to the same Court which
passed the sentence in order that it might first ask the pri-
soner if he had anything to say and then re-sentence him.

Inasmuch as we will reverse the judgment for another
reason, and order a new trial, it is perhaps unnecessary to
discuss this point at such length, but as it was fully argued
and thoroughly considered by us, we concluded to state our
views on the subject. We are of the opinion that it is not
reversible error, even in capital cases, not to ask the prisoner
if he has any reason to give why sentence should not be
passed, unless it is apparent that the prisoner was or may
have been injured by the omission. But we do strongly rec-
ommend and advise that the practice be followed in all cases
in which either the death penalty or confinement in peniten-
tiary can be imposed. In capital cases the practice, so far as
we are aware, has been followed throughout this State, and
in most of the Circuits in all penitentiary cases. In *Givens*
v. *State,* 76 Md. 485, JUDGE BRISCOE said: "In *Common-
wealth* v. *Roby,* 12 Pick. 514, the Court said, that the con-
stant practice of the Commonwealth should be observed and
followed, unless good reason can be assigned for the change.
The forms adopted in a criminal trial are of importance,
inasmuch as they have a strong tendency by their solemnity,
to impress upon all who are engaged in it, the interesting
and highly responsible nature and character of the duties
which devolve on them respectively."

No more responsible duty can rest upon an officer of the
law than the exercise of the discretion vested in the judges
of this State in reference to this and some other crimes, by
which they are called upon to determine whether a convict
shall be sentenced to death or be imprisoned in the peniten-
tiary. It is an exceedingly unpleasant duty in any case to
impose the death penalty, and before exercising the discre-
tion, every Judge should be glad to have all the information

he can properly consider. It may be possible that something can be said before sentence which might influence the Court in the exercise of its discretion, and, as we have already indicated, if it be apparent that such was or might have been the case, and the prisoner had not had an opportunity to be heard, we would feel called upon to remand the case in order that he might be re-sentenced, after the inquiry was made of him. Moreover, if the proceedings are conducted with the solemnity with which they should be when a sentence of death is about to be imposed, the prisoner may say something which will make his case a warning to others, even if his remarks are not of service to himself. So although we would not reverse a judgment unless we could see that the prisoner was or may have been injured by the omission, we repeat that in our judgment the practice, which we supposed was always followed in capital cases in this State, of making the inquiry, should be adopted in all cases in which the death penalty may be imposed, and ordinarily in all other cases in which the defendants may be confined in the penitentiary.

It may be well to add that when it is done the proper practice is to have the fact so noted in the record. In this case, we are not satisfied that any injury was done the appellant, by the omission to make the inquiry, and at any rate, as the judgment itself will be reversed, there is no occasion to remand the case for a new sentence. It will not be out of place to conclude the discussion of this branch of the case by referring to 19 *Ency. of Pl. and Pr.,* 456, where it is said, "there seems to be a growing tendency, even where capital punishment is inflicted, to dispense with this ceremony, or at least to consider it not essential, on the ground that the reasons for its existence are not applicable at the present day."

4. It is also alleged that the judgment and sentence in this case impose a cruel and unusual punishment, and also that the sentence imposed is out of proportion to the crime charged in the indictment, and too severe a penalty for said crime.

The facts proven in the case are not presented by the record, but we cannot hold that the penalty authorized by the statute to be imposed for such a crime is in violation of the Constitutional provisions. Article 16 of the Declaration of Rights of our present Constitution declares that "No law to inflict cruel and unusual pains and penalties ought to made in any case or at any time hereafter," and Article 25 is, "That excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted by the Courts of law." It would hardly be contended that the punishment provided by our statute for the crime of rape— death or confinement in the penitentiary for not less than eighteen months, or more than twenty-one years—is in conflict with those provisions, and when the Legislature changed the penalty, for an attempt to commit the crime, to death or confinement in the penitentiary, in the discretion of the Court, it is probable that it took into consideration, the fact that it is often difficult to prove whether the crime of rape was actually consummated. Under some circumstances the outrage upon the particular woman and upon society can scarcely be said to be less because the prisoner did not succeed in accomplishing his purpose than if he had. If a revolting crime of this nature is so frequently repeated as in the judgment of the Legislature to call for such punishment, we cannot declare it to be contrary to such provisions of the constitution. It is said in *Foote* v. *State,* 59 Md. 269: "For the prevention of crime, which is the true end of all punishment, the law giver may properly consider the frequent and easy opportunities of committing the crime and the difficulty of guarding against it, and may grade his punishment accordingly." In passing it may be said that in that case the Court referred to the fact that "The eighth amendment to the Constitution of the United States is not a restraint upon, and does not apply to, the Legislature of a State, but only to the National Legislature, and, therefore, has no application to this case. *Pervear* v. *Commonwealth,* 5 Wallace, 479." In *Mitchell* v. *State,* 82 Md. 527, the traverser was convicted

of an attempt to carnally know and abuse a woman child under the age of 14 years, that being a common law offense and not covered by our statute. He was sentenced to imprisonment in the city jail for fifteen years, and it was contended that it was contrary to the Declaration of Rights, but this Court in considering the case said: "Our law inflicts pain, not in a spirit of vengence, but to promote the essential purposes of public justice. Severity is not cruelty. The punishment ought to bear a due proportion to the offense. Crimes of great atrocity ought to be visited with such penalties as would check, if not prevent, their commission." Again on page 534 the Court said: "If the punishment is grossly and inordinately disproportionate to the offense, so that the sentence is evidently dictated not by a sense of public duty, but by passion, prejudice, ill-will, or any other unworthy motive, the judgment ought to be reversed, and the cause remanded for a more just sentence. But no such instance of judicial misconduct has ever occurred in our good old State, and we trust that the day may never come when it will be witnessed. When the discretion which the law confers is exercised with a sedate and conscientious judgment under the influence of a love of public justice, and a desire to promote it, the Judge is acting in the legitimate discharge of his duty and his sentence is not subject to reversal." So without further discussing this subject, no ground for reversal for the reason now being considered is shown by the record.

5. This brings us to the action of the lower Court for which we reversed the judgment by a *per curiam* order heretofore filed. The quotation above shows how the case was conducted, and that the witnesses for the prosecution were examined out of the presence of the prisoner. Article 21 of the Declaration of Rights provides, "That in all criminal prosecutions every man hath a right to be informed of the accusation against him; to have a copy of the indictment or charge in due time (if required) to prepare for his defense; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the wit-

nesses for and against him on oath; and to a speedy trial by
an impartial jury, without whose unanimous consent he ought
not to be found guilty." In determining whether any part
of the public should be excluded from the trial of a criminal
case, some discretion must be allowed the trial Court. Under
no circumstances should a trial be so conducted as to have
the appearance of a Star Chamber proceeding, but cases
sometimes occur which have a demoralizing influence on the
spectators and to some extent on the community. It has al-
ways, so far as we are aware, been the practice in this State
to exclude minors in such cases, and if women are not ex-
cluded they are often at least warned that the character of
testimony will be such as to make it undesirable for them to
be present. Of course no exclusion should be permitted
which might injuriously and improperly affect the prisoner,
but there may be cases where the prosecuting witness can be
protected without doing the prisoner any harm. To require
a refined, virtuous woman to relate the facts of a felonious
assault upon her in the presence of a large audience inflicts
a great punishment on her, and oftentimes does the accused
more injury than if she were examined under other circum-
stances, for she may get in such a distressing condition as to
improperly arouse the sympathies of the jury and possibly
to cause counsel for the prisoner to refrain from a cross-
examination which might have helped his client. The testi-
mony of an outraged woman is calculated to create a bitter-
ness against the accused amongst the audience, the effect of
which is sometimes difficult to keep from the jury, as specta-
tors may by their looks or manner even unconsciously betray
their bitterness of feeling. The danger is that the horror
of the crime may cause the hearers too readily to connect the
accused with the commission of it. It is undoubtedly often-
times better for the accused to have the trial conducted with
less publicity than cases ordinarily are, and in a case such
as this we are not prepared to say that the rights of the appel-
lant were violated by having the trial in the petit jury room,
instead of the Court room. The case was tried before the

Court, which, under our Constitution, the accused has the
right to elect instead of a jury, and while the record does
not show how many persons were in the room, it is not sug-
gested that any one whom the prisoner or his counsel desired
to be present was excluded. It does show that the trial was
held there with the consent of the attorney for the traverser
and no objection was made to it being held there instead of
in the Court room. We can see no reason why the prisoner
or his attorney for him could not agree to have the case tried
where it was. We are aware that under some decisions, in
other jurisdictions, that might not be allowed, but there is
nothing in our Constitution or statutes to prohibit it, and we
are satisfied that it may be in the interest of justice and for
the good of the community to permit the trial Court to hear
a case of this character outside of the hearing of the general
public, provided there are enough persons present to secure
protection to the accused against any possible advantage
being taken of him or injury done to him, and that it is done
with his consent or that of his attorney under such circum-
stances as show his consent. The general rule is thus stated
in *Cooley's Constitutional Limitations,* side page 312: "It
is also requisite that the trial be *public.* By this is not meant
that every person who sees fit shall in all cases be permitted
to attend criminal trials; because there are many cases where,
from the character of the charge, and the nature of the evi-
dence by which it is to be supported, the motives to attend
the trial on the part of portions of the community would be
of the worst character, and where a regard to public morals
and public decency would require that at least the young be
excluded from hearing and witnessing the evidences of human
depravity which the trial must necessarily bring to light.
The requirement of a public trial is for the benefit of the
accused; that the public may see he is fairly dealt with
and not unjustly condemned, and that the presence of inter-
ested spectators may keep his triers keenly alive to a sense
of their responsibility, and to the importance of their func-
tions; and the requirement is fairly met with, if, without

partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn thither by a prurient curiosity, are excluded altogether."

But we are of the opinion that there was error in taking the testimony out of the presence of the appellant. Whether or not that could be expressly waived by the accused himself is unneessary to determine, as the record does not show that it was. He had the constitutional right to be confronted by the witnesses, and although his attorney must have known that he was not present and may, so far as he could, have consented to let the traverser remain in the Court room while the witnesses were being examined, we are of opinion that that could not bind the appellant. It is quite possible that one on trial may be able to make valuable suggestions to his attorney during the examination of witnesses,—particularly the prosecuting witness in a case of this kind,—as it matters not how well an attorney may have prepared for the trial of a case, it is impossible for him to anticipate all that may be said, or to know all the details a witness on the opposite side will testify to. It might be that in the course of her examination in the presence of the accused the prosecuting witness would discover that she had made a mistake in the identity of the party committing the crime. Other reasons suggest themselves to show the importance of the accused being present, but it has so far as we are aware been the uniform practice throughout the State to require the presence of the accused in capital cases during the examination of witnesses, and this is the first instance which has been brought to the attention of any of us where that practice has been departed from. We have no doubt that the lower Court was induced by the best of motives to adopt the course it did, but we cannot hesitate to hold that it committed a grave error in permiting the testimony to be taken—especially that of the chief prosecuting witness,—out of the presence of the

accused.   In *Johns* v. *State,* 55 Md. 360, JUDGE ALVEY in considering an objection to the introduction of the Comptroller's Certificate, said: "It is only where the prosecution is to be maintained by the testimony of living witnesses that they are required to be produced in Court, confronted with the accused, and deliver their testimony under the sanction of an oath, and be subject to cross-examination.   In other words, no witness shall give his testimony in secret or out of the presence of the accused; and no party shall be put upon his trial upon mere hearsay evidence; but the witness shall be produced, and be subject to all the tests that the law has devised for the full disclosure of the truth."

We do not overlook the fact that the crime of which the appellant is accused is a misdemeanor, but while that is true, he was liable to be sentenced to death, if convicted, as he in fact was, and he was entitled to the full protection of this constitutional provision.   That he had the right to be confronted with the witnesses cannot be denied, and, if it be conceded, that he could waive that right, the record does not show that he did, and in our judgment his counsel could not waive it so as to bind him.   It is too important a right for this Court to permit it to be waived by implication, by counsel, or by anything short of an express waiver by the prisoner, even if that is to be permitted, which need not be determined in this case.

> *For the error referred to the judgment was reversed by the per curiam order heretofore filed.*