## LLOYD WALKER *v.* STATE OF MARYLAND

[No. 122, October Term, 1945.]

*Decided May 15, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Linwood G. Koger* and *Robert P. McGuinn,* with whom was *George W. Evans,* on the brief, for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *William Curran, Attorney General,* and *J. Bernard Wells, State's Attorney for Baltimore City,* and *Bernard G. Peter, Assistant State's Attorney for Baltimore City,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant in this case was convicted of attempted rape by the court, sitting as a jury, in the Criminal Court of Baltimore City. After a motion for new trial had been overruled by the Supreme Bench, he was sentenced to be hanged. The appeal comes here under Section 88A of Art. 5 of the Code, Chap. 1068, Acts of 1945, the appellant having filed an oath *in forma pauperis.* The appeal is not based upon any objections taken in the course of the trial, but is based upon (1) alleged error in certain remarks of the trial court after verdict, but before sentence, and (2) the court's alleged refusal to accept the recommendations of medical experts as to the sentence.

It appeared from the testimony produced by the State that the prosecuting witness, an unmarried girl of nineteen, and her escort, a boy of the same age, were sitting

on a bench on a driveway in Carroll Park at about 2:15 a. m. on the morning of June 4, 1945, when the traverser, a negro youth aged 23, approached from the rear, and demanded their money, watches and jewelry. When these were handed over, he required the couple to go farther into the park, through clumps of bushes, and directed the escort to lie on his face, and the prosecuting witness to lie on top of her escort, face up. The traverser ripped the escort's clothing down the back with a knife, and ripped the clothing of the prosecuting witness down the front, until she was entirely nude except for her coat. He threatened her with the knife and hit her several times with his fist, when she refused to accede to his demands for sex relations. Finally, the escort managed to extricate himself and engaged the traverser in a tussle, during which he was stabbed about the face, but the traverser finally ran off, leaving his cap on the ground. The traverser was 6 feet 4 inches tall, and weighed 173 pounds. He admitted tearing the clothing, of the prosecuting witness, although he denied using a knife, but said that he did so to prevent them from getting in touch with the police until after he could make his escape. He admitted the robbery, but denied any intention to rape. A ring belonging to the prosecuting witness and a watch belonging to the escort were turned over to the police by the traverser's brother.

After the verdict, the trial court remarked: "I recognize this man. I recognize his brother. They were here in court before me so little time ago. I have a vague recollection there was a pistol involved, with blank shells in it. I also have the recollection something occurred down in this same locality, down around Carroll Park, and I believe the brother at that time—I don't know which was charged, or who came to the rescue of who in the case—but I have a rather distinct recollection of having seen him and his brother here before. Do you have anything on that, Mr. Peter? (Mr. Peter was the assistant State's Attorney who tried the case for the State.)

"Mr. Peter: I don't know whether your Honor should know about that.

"The Court: You better not tell me about it. However, I have a pretty definite recollection of there being an alibi about a card game. I think I remember pretty much about it.

"Mr. Peter: I think I would prefer not to tell your Honor about it at this time."

No objection was taken to the remarks of the court at that time.

In the recent case of *Murphy v. State,* 184 Md. 70, 40 A. 2d 239, we had occasion to consider, upon motion in arrest of judgment, the question as to the extent to which a trial court might consider prior convictions in passing sentence. Of course, a trial court should not consider mere charges of which a traverser was acquitted. But the mere fact that a trial court may have had some previous acquaintance with a traverser, in the course of his judicial duties, would not disqualify him from hearing a subsequent case. In the instant case, it seems clear that the court did not recall whether the traverser or his brother had been charged with a previous offense, the nature of that offense, or the outcome. Moreover, it appears that the court, and the State's Attorney, had the applicable rules well in mind. We find nothing in the remarks quoted to indicate any prejudice against the traverser on the part of the trial court, or that any undue weight was given to the previous court appearance of the traverser.

The main contention of the appellant is that the court erred in imposing the death penalty, because the two medical experts recommended a lighter sentence. Dr. Lewis Hill, at the court's request, examined the traverser, and reported to the court: "this patient, although feebleminded and illiterate, must be regarded as responsible. The result of the mental examination is a recommendation not for leniency, but on the contrary for permanent segregation of this patient from society because he is dangerous and there is no hope for improvement."

Dr. F. G. N. Cushing, a medical expert selected by the appellant's counsel, also examined the appellant at the court's request and reported: "this patient is considered an intellectual moran and it is doubtful whether or not he is capable of being responsible for his moral judgment. It is the examiner's feeling certainly that permanent segregation of this type of individual is advisable for the sake of society because feeble minded individuals with such impaired judgment are dangerous to the community in which they live because of possible future acts. By all rights this man should have been segregated years before he came to this plight and it would seem to be society's responsibility to have undertaken that segregation before he became involved in real difficulties with that society. While a death sentence might eliminate this particular individual, it does not seem [right] to punish that individual for a constitutional defect for which he himself is not responsible. Sociologists and psychiatrists in the past have always argued that society should be responsible for these constitutional defectives in its midst."

It may be noted that both experts agreed that the traverser should be "permanently segregated;" but in the case of Dr. Cushing, at least, it would appear that he did not believe that capital punishment should ever be imposed in the case of a "constitutional defective."

The Statute under which the court acted in imposing sentence (Section 13 of Art. 27 of the Code, Supp. 1943) provides that: "* * * every person convicted of the crime of an assault with intent to commit a rape shall be guilty of a felony and shall be punished with death, or, in the discretion of the court, he shall be sentenced to confinement in the Penitentiary for the period of his natural life, or he shall be sentenced to confinement in the Penitentiary for not less than two years nor more than twenty years * * *." It thus appears that the trial court was faced with a choice of three permissible penalties under the statute. The responsibility for the selection of the penalty rests upon the trial court, not with

the medical experts. Nor has this court the authority to substitute its judgment for that of the trial court. Under our system the power to commute sentences resides in the executive. In *Duker v. State,* 162 Md. 546, 160 A. 279, the trial court imposed the death penalty, and the case came here upon a motion to strike out the sentence because it was contended that the trial court reasoned erroneously and drew unwarranted conclusions from evidence it received, in the form of medical opinion and otherwise, to guide its discretion in determining which of the statutory penalties should be imposed. This court said: "* * * the legality of the sentence is not, and cannot be, disputed. * * * The court is clear in its opinion that it is given no power to consider an objection such as that now made to the trial court's action. * * * The objection * * * is only to the reasoning announced by the court as that which went to form its decision. It is, more succinctly, an objection to the decision. And this court has no power to review that reasoning, and set aside the sentence if it should find any error in the process. In that, there can be no abuse of discretion to be reviewed by the appellate court. The sentence was of undeniable legality, imposed by the tribunal to which alone the law looks for the decision as between the two alternative penalties, and this court could not interfere with it on the ground urged without usurping the functions of the court of original jurisdiction." See also *Murphy v. State, supra.* For a case in which the death penalty was imposed for an attempted rape, see *Dutton v. State,* 123 Md. 373, 91 A. 417. It was there expressly held that the imposition of the death penalty was not a cruel or unusual punishment within the scope of constitutional prohibition.

Upon the record we find no reversible error. Whatever the scope of the statute under which this appeal was taken (Section 88A, Art. 5 of the Code; compare Section 88, Art. 5), it does not empower this court to review a sentence.

*Appeal dismissed, without costs.*