## LOWERY *v.* STATE

[No. 129, October Term, 1952.]

*Decided April 23, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Richard Paul Gilbert,* with whom was *John Gordon Underwood,* on the brief, for appellant.

*Ambrose T. Hartman,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, *Anselm Sodaro,* State's Attorney of Baltimore City, and *James F. Price,* Assistant State's Attorney, on the brief, for appellee.

SOBELOFF, C. J., delivered the opinion of the Court.

After conviction by a judge in the Criminal Court of Baltimore City, sitting without a jury, Charles Crosby Lowery, twenty-two years old, was sentenced to be hanged for the crime of rape upon his fifteen year old sister-in-law. In this appeal four points are addressed to our consideration. These will be discussed, though not precisely in the order raised. They are:

First, that while the court ruled out certain testimony of appellant's wife, previously admitted subject to exception, the judge's remarks at the conclusion of the trial showed that the testimony had prejudicially influenced his mind.

Second, that without foundation in the evidence, the judge took "judicial notice" of the victim's virginity.

Third, that the punishment imposed is grossly disproportionate to the offense.

A fourth point, not mentioned in the brief, was strongly stressed in oral argument, namely, that the judge read a report, not introduced in evidence at the trial, which influenced his verdict.

There would be no advantage in a recital of the sordid details of the crime. The record shows a sufficient,

indeed we may say a convincing, basis for belief beyond a reasonable doubt, in the appellant's guilt. The story of the victim is well corroborated. Briefly summarized, there is testimony to show that, pretending that he wanted to get a note at his brother's house to give the prosecutrix for her sister, his estranged wife, the appellland led the girl to a lot near some garages, where he brutally beat her into insensibility, broke her tooth, raped her, and when she screamed threatened to choke her to death.

She made complaint against him within minutes after the event and was taken to the police station almost at once. She pointed out the place of the crime, and police found there articles with blood on them. Blood was on the trousers of the accused, which the police took into their possession. The girl was treated at the University Hospital. Her mouth and lips were swollen, bruised and cut. She had numerous scratches on both thighs and legs. There was bleeding not only from the hyman itself, but there was evidence of recent extensive tearing of the genital outlet. In the opinion of the physician who examined her, the girl's condition indicated that this was her first sexual experience.

The accused admitted sexual intercourse with the prosecutrix, but claimed it was with her consent. Indeed, he asserted that he had had sexual relations with her twice the year before. On the stand he voiced a long series of grievances against his wife and her family. Among other things, he suspected his wife of improper associations with other men. He declared that he wanted to have intercourse with the girl, "figuring [she] would go back and tell my wife and hurt her just as bad as she would hurt me."

1. A feature of the trial that has been brought under attack is that in almost the very beginning of the trial, as if to provide a background for the prosecutrix's testimony, the State called the defendant's wife and had her testify to practically nothing, except that a few days before the alleged offense the appellant, having just

escaped from the House of Correction, made threats against her over the telephone. The testimony was received subject to exception and, at the conclusion of the State's case, was stricken out.

The defendant's story, as told on the witness stand, provided a more ample ground for thinking he hated his wife than did the wife's brief assertion. It may well be that the testimony of the appellant concerning his attitude toward his wife is what the court alluded to when it announced the verdict of guilt, saying that the man is full of hatred toward his wife.

As a general rule, it is reversible error for the prosecution to attack the character of the accused before it has been put in issue by him, or to show other unrelated crimes or misconduct likely to cause prejudice against him. *Dobbs v. State,* 148 Md. 34, 129 A. 275.

But the rule is equally established that where the testimony shows motive or intent it is entitled to be admitted. Here, unfortunately, we do not have the benefit of the sidebar conversation between counsel and court when the admissibility of the wife's testimony was challenged; but we think it clear enough that it was offered to show the motive for the crime. Superficially, one would not suppose that the rape of one woman was motivated by desire to injure another; but such instances are not unknown to modern psychiatry. A somewhat similar mental aberration, given different expression, was before this court in the case of *James v. State,* 193 Md. 31, 65 A. 2d 888. From what the appellant told the court, it is clear that the act of which he was accused was done not so much from motives more usual in such cases as from a desire to hurt his wife. Under the circumstances, the wife's story about his threats had a possible significance directly related to the offense charged.

If we were of the view that the wife's testimony was offered, under any guise, merely to show his evil character, or violent disposition, or prior criminal record, we should unhesitatingly declare its admission erroneous. We should not be disposed to extenuate it simply because

the defendant later took the stand; for the introduction of a false issue may force an accused to take the stand where he would otherwise have elected to remain silent. Here, according to this defendant's complicated mentality, his attitude toward his wife was connected with the offense charged. It became relevant to explain his act. A defendant's taking the stand would not necessarily rectify the erroneous admission of damaging testimony against him as part of the State's case; but here the State's claim that the wife's testimony was relevant and material was later fortified, if there were any doubt in the first place, by the self-revealed mental processes of the appellant. Our conclusion therefore is that even if the court had not stricken out the wife's testimony, or if he failed to disregard it after striking it out, no error was committed.

2. Error is claimed in that the court is said to have taken "judicial notice of virginity without previous medical history."

In announcing the verdict of guilt, the court noted the appellant's claim of his earlier relations with the girl. The Court said this was obviously an untruth, adding, "the one thing that this court can tie to, and from which all other acts become clear, is the fact that this girl was a virgin until brutally assaulted by her brother-in-law in back of the garages on the night in question."

The appellant quotes a single sentence in a medical work, indicating that the hymen *may* persist after copulation. We see no reason why the trial court or we should reject plain, uncontradicted and convincing supporting testimony of the physician, simply because an apparently conflicting, or more accurately, an apparently qualifying, statement, not in the record, is produced here for the first time from a medical book, out of context. The court was merely applying a test of defendant's credibility, and we find no error in it.

3. Next, we deal with the matter of the report of the psychiatrist. The question of the propriety of the

sentence, which is the third reason advanced for reversal, we leave till later.

In the argument here, though not in the brief, counsel for the appellant suggested that the trial judge must have read and considered, before verdict, the medical report which he had ordered at the defense counsel's request. This had been delivered, in accordance with the customary practice, to the judge.

Counsel thought they perceived striking similarities between the language used by the judge in announcing the verdict and the language of the report which was not offered in evidence. It was reasoned that the report presents the hypothesis that the appellant chose the victim to avenge his hostile feelings toward her sister, his wife, and the judge also stressed the man's resentment toward his wife. This, appellant's counsel earnestly maintained, also demonstrated the point heretofore discussed, namely, the deep impression allegedly made upon the judge's mind by the wife's testimony, which had been excluded.

In the administration of a criminal court the judge often cannot avoid hearing statements damaging to an accused. When he fixes bail, except it be for a commonplace, routine charge, he is likely to inquire at least generally as to the facts. Indeed, it is difficult for him to exercise a sound discretion in the absence of such inquiry. So too, when application is made for the appointment of counsel, or for medical examination of the accused, as occurred in the instant case.

Such communications with the judge concerning cases in his court do not under normal conditions disqualify him. It is, of course, the better practice for judges receiving reports of such examinations not to read them before the verdict, except where for good cause this is found necessary in the interest of justice, and then only with the full knowledge and approval of the State's Attorney and the defense counsel. A latitude must necessarily be allowed, but it is well to remember that judges, though trained and disciplined, are not imper-

vious to influences which affect other men. *Dobbs v. State, supra; Baltimore Radio Show, Inc. v. State,* 193 Md. 300, 325, 67 A. 2d 497. Preferably, it should not be read by him at all before or during the trial, unless regularly introduced in evidence in open court, for to do so verges upon the error (denial of the right of confrontation), which was one of the reasons for reversal in *Duffy v. State,* 151 Md. 456, 135 A. 189. Moreover, as is well-known, such reports not infrequently embody much hearsay and inadmissible material, and opinions of third persons, bearing on the guilt or innocence of the traverser, as well as the extent and nature of the punishment he should be given. It often is an important feature of the trial, and care should be taken that the rights of the accused be not impaired.

A careful study of the record convinces us, however, that there is no basis for thinking that the trial judge did in fact read the medical report, which had not been introduced in evidence, before declaring his verdict. The language he used seems to be the natural expression of a conclusion readily arrived at from the evidence offered by the appellant himself. There is no basis, other than unsupported surmise, that it entered into the conviction. Under the established rules it was, of course, competent after verdict for the court's guidance in fixing the penalty. *Murphy v. State,* 184 Md. 70, 40 A. 2d 239.

4. With the sentence in this case we have no authority to interfere, since it is not "grossly and inordinately disproportionate to the offense." In many jurisdictions appellate courts are permitted to make a general review and to revise sentences in their discretion. Under our law only the Governor is permitted such broad discretion, not this Court. *Reid v. State,* 200 Md. 89, 88 A. 2d 478.

*Judgment affirmed.*