FARRELL *v.* STATE

[No. 174, October Term, 1956.]

*Decided May 13, 1957.*

*Motion for rehearing or modification of the opinion, filed June 11, 1957, denied June 25, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*William I. Gosnell,* for appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *Joseph G. Koutz* and *Norman Polski, Assistant State's Attorneys,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Cornelius Farrell from a judgment and sentence to death for rape.

On June 5, 1956, a white woman, hereinafter referred to as Mrs. T., visited Sach's Tavern in south Baltimore frequented by colored people. She testified that she stayed there for about two hours and consumed seven bottles of beer. She went there to see a girl who owed her husband some money and she thought maybe she could get it back. She left the tavern to get a cab to go home. While walking along the street she was attacked by three men, including the defendant, a negro. She was struck in the jaw and knocked unconscious and dragged into a lot behind a garage. When she awoke she found the defendant engaged in the sexual act. She tried to scream, was struck again, and knocked unconscious. Prior to the attack she said she had neither seen nor spoken to any of her attackers.

Officer Williams testified that he was in the area and heard something unusual and went to investigate and found the woman lying on the ground. Defendant and two other men were running from the scene. Defendant, in his effort to escape, jumped through two windows, but was captured. When found by the officer the woman was bleeding from the mouth and could not speak coherently. There were no

clothes on the lower part of her body. She did not have her glasses on and could not see without them. The hospital records indicated that she was severely beaten. The slide disclosed spermatozoa. Complete penetration was also disclosed.

The defendant testified that the woman was sitting on the lot when he first saw her. As he came up the alley she called him a "nigger" and asked him for a smoke and also asked him for a drink. He got a drink from Sach's Tavern and brought it to her. She then became romantic. She asked him to hold her glasses and solicited the sexual act, which was accomplished. He denied he struck her. He said the blood on his clothes was blood from cuts sustained by him when he jumped through the windows. We must conclude from the evidence that there was ample evidence to find that the defendant struck Mrs. T. and had sexual intercourse with her.

On cross-examination defendant admitted that he had been convicted a number of times for disorderly conduct and assault. The record offered in evidence showed that he had been convicted eighteen times for drunken and disorderly conduct, once for carrying a deadly weapon, and three times for assault. During his cross-examination defendant also admitted that on May 8, 1955, he had been committed to Crownsville and stayed there eight or nine months. Crownsville is under the supervision and control of the Department of Mental Hygiene, Code, 1951, Article 59, Section 18. At the end of the trial on June 22, 1956, before verdict was passed, the court-appointed attorney was asked: "Anything further, Mr. Gosnell?" This colloquy then followed. "(Mr. Gosnell) No, your Honor, except this: your Honor, I have had no knowledge that this man had been in Crownsville. In fact, I didn't even know he had been convicted before because he told me that he always stuck to his story he didn't have any convictions. In view of the fact he has been to Crownsville for eight or nine months I would ask that your Honor have him examined, in fairness to him. (The Court) I will have an examination made before the case is disposed of, you can be sure of that. (Mr. Gosnell) All right. (The Court)

Anything further from the State? (Mr. Koutz) No, your Honor, that is the case. (The Court) Obviously there only can be one verdict in this case, the verdict is guilty. (Mr. Gosnell) Your Honor, the reason I asked you to have him examined before your Honor made a finding is because if the man is found insane it would be not guilty by reason of insanity, your Honor would then, probably, strike out this verdict. (The Court) Well, I am not a doctor, but certainly from what I have seen and heard, I don't think there is any doubt, I don't know whether he is insane or not, I don't get the impression that he is; but, *if I get a medical that indicates something to the contrary I can always correct the verdict. (Mr. Gosnell) Strike it out. Very well, sir.*

(The Court) It is a serious situation, however, with which I am presented and one that does call for all the information that I can find out about the man. Before I go any further, Mr. Gosnell, I want to thank you for representing him, I appointed you, I told you it was a very serious case.
(Mr. Gosnell) Yes sir.
\* \* \*

(The Court) I, frankly, don't see any basis for any motions to be filed for a new trial. Of course it is a capital offense case. However, in this case I am not going to direct that you file because I can't see that there is any basis for it, for any such motion whatsoever. But, I will determine what is going to be done in that respect after I get all these other reports. And may then be that I would, depending upon the disposition I finally determined to make of it, I would direct an appeal instead, but we haven't crossed that bridge. I was thinking about that possibility. I, frankly, at this moment don't see any reason to direct that you file a motion. Along the other line, if it is justified, I might then direct an appeal, but we will cross that bridge when we get to it."

On September 21, 1956, three months after the trial and just before imposing the death sentence, the trial judge stated: "Mr. Gosnell, before I impose sentence in this case, I want to direct that you take an appeal to the Court of Appeals. At the conclusion of the trial I know we discussed the matter of motion for a new trial; and you felt then, as I

recall it, that there really was no substantial basis for it. And, I concurred in that frankly, but in view of the sentence that I am about to impose I think that the case ought to be reviewed by the Court of Appeals. It would probably have occurred, in any event, if the motion had been taken."

On the same day the sentence was passed the defendant's attorney filed a petition in which he alleged, among other things, the following: after the testimony was completed he found out for the first time that the defendant had formerly been an inmate at Crownsville State Hospital on one or more occasions suffering from some mental disorder. Immediately upon discovering this he requested that a medical report be made of the defendant to which the trial judge consented. On September 21, 1956, the petitioner was advised to appear in the criminal court for disposition in the case of Farrell, at which time Farrell was sentenced to death. Before the sentence was passed the trial judge received a medical report which the petitioner presumes set out the mental condition and background of Farrell. He thereupon requested that he be given a copy of the medical report or that he be permitted to make a copy of the medical report or take notes therefrom in order that he might have a better knowledge of the mental condition of the defendant and be able to decide the next step to be taken. The trial judge had repeatedly refused this request and also refused his request to see and make notes from the medical report, and has further filed in the case a sealed envelope containing this medical report with a notation that it is not to be opened without the permission of the presiding judge, Criminal Court, Part I, Baltimore City. The petitioner further alleges that he had again approached the trial judge requesting that he be permitted to see the report and make copies and notes therefrom and use such report in further defense of Farrell. His request has been denied, although it has been the usual procedure in such cases that the report be filed with the record and available for examination by the defense counsel. Petitioner is unable to proceed intelligently with the defense of Farrell without a copy or permission to examine the medical report.

As a result of that petition, on December 17, 1956, ap-

proximately six months after the trial and three months after the sentence, the trial judge wrote Mr. Gosnell the following letter:

"You originally filed a petition to obtain a copy of the medical report in the above case. I declined to furnish you with a copy of it although I informed you that you might inspect my copy, and, as I explained to you at that time, it is not customary to release copies of the medical reports that we obtain after trial. The original report is sealed and is among the papers in the case, and, of course, would be available to the Court of Appeals if an inspection were desired. Subsequently, I suggested that you obtain a 30-day extension in order that I might arrange for a time when Dr. Guttmacher would be available and would have an opportunity for you to examine him with respect to his findings. Again my idea was to avoid the violation of the rule that we have generally followed with reference to the release of these medical reports. However, because of the pressure of other matters, I have not found it possible to arrange for such a hearing, and in order to avoid any further delay, I am enclosing a photostatic copy of the medical report as you originally requested."

The defendant's attorney stated in this Court that sentence of death was pronounced against the defendant without first asking him if he had anything to say. The record is silent on this matter. In *Dutton v. State,* 123 Md. 373, 91 A. 417, Chief Judge Boyd discussed this matter at some length and pointed out that the authorities are not uniform on the subject and that in Maryland there are no statutes on the subject as in many states. He further stated that the greater number of authorities hold that in capital and penitentiary cases this practice should be followed and that such practice, as far as he was aware, had been followed in most of the circuits of this State. He also added that when it is done the proper practice is to have the fact so noted in the record. He con-

cluded that, although the Court would not reverse a judgment for this reason unless the prisoner was or might have been injured by the omission, in his own judgment this practice should be adopted in all cases in which the death penalty may be imposed and ordinarily in all other cases in which the defendant may be confined in the penitentiary. We are of opinion that on this point there was not sufficient showing of prejudice to warrant a new trial.

The attorney for the defendant further contends that the medical report should have been made available to him long before he received it. Of course, after verdict, the trial court may inquire into the past record of the traverser and hear evidence and receive reports in aggravation or mitigation of punishment. In such investigations his inquiry is not limited by the rules of evidence and the trial judge is invested with wide discretion in determining the sentence to be imposed. *Murphy v. State*, 184 Md. 70, 40 A. 2d 239; *Walker v. State*, 186 Md. 440, 47 A. 2d 47. Psychiatric reports at times are used for this purpose. *Balto. Radio Show, Inc. v. State*, 193 Md. 300, 328, 67 A. 2d 497. Pertinent official records may also be examined. *Donner v. Calvert Distillers Corp.*, 196 Md. 475, 493, 77 A. 2d 305. In *Driver v. State*, 201 Md. 25, 31, 92 A. 2d 570, it was said that in imposing sentence the court can exercise a broad discretion in the use of sources and types of evidence to assist in determining the kind and extent of punishment to be imposed, within the limits fixed by law. However, such reports should not influence the verdict unless the rules of evidence are followed and cross-examination allowed the defendant. In *Lowery v. State*, 202 Md. 314, 321, 96 A. 2d 20, among other things, the defendant suggested that the trial judge must have read and considered before verdict the medical report which he had ordered at the defense counsel's request. Chief Judge Sobeloff said in that case: "A careful study of the record convinces us, however, that there is no basis for thinking that the trial judge did in fact read the medical report, which had not been introduced in evidence, before declaring his verdict. The language he used seems to be the natural expression of a conclusion readily arrived at from the evidence offered by

the appellant himself. There is no basis, other than unsup-
ported surmise, that it entered into the conviction. Under
the established rules it was, of course, competent after verdict
for the court's guidance in fixing the penalty. *Murphy v.
State,* 184 Md. 70, 40 A. 2d 239."

In this case it is evident that the defendant's attorney did
not know that the defendant had been in Crownsville until
after the pleas were filed and until after defendant took the
stand in his own defense. At that time his attorney notified
the court that he would like a medical examination made in
order that he might determine whether to file a plea of not
guilty by reason of insanity. The trial judge stated that, if
he received a medical report which indicated "something
to the contrary", he could strike out the verdict. We are,
therefore, of opinion that this was a tentative verdict, pend-
ing evidence as to the defendant's mental condition. There-
fore, such evidence which might affect the tentative verdict
in the case should be taken in open court, subject to the rules
of evidence, and the defendant's attorney should be allowed to
cross-examine on that issue. We read the record as showing
that the investigation as to the sanity of the accused was pri-
marily for the purpose of showing whether the tentative
verdict should become final and not for aid in passing sen-
tence. It is true that the conclusion of the examining doctor
did not show that defendant did not have capacity and reason
sufficient to enable him to distinguish between right and
wrong, and understand the nature and consequences of his
act. *Thomas v. State,* 206 Md. 575, 112 A. 2d 913; *Salinger
v. Supt.,* 206 Md. 623, 112 A. 2d 907; *Bryant v. State,* 207
Md. 565, 115 A. 2d 502. This report, made by Dr. Gutt-
macher, stated that defendant had been admitted to Crowns-
ville twice during 1955, where a diagnosis was made of
"acute hallucinosis due to alcoholic intoxication" and that the
excessive use of alcohol "had a very deleterious effect upon
his cortical brain cells", but that he was a responsible agent.
However, it is impossible to say what cross-examination or
evidence offered by the defendant might have revealed on this
issue. We are of opinion that a new trial should be awarded
the defendant.

We know of no authority given a trial judge to determine whether a motion for a new trial should be filed or an appeal taken. The right to appeal in criminal cases is conferred by Code, 1951, Article 5, Section 86, upon the parties, to be taken in the same manner as in civil cases. It is further provided that no appeal in a criminal case shall stay execution of sentence unless the counsel for the accused shall make oath that the appeal is not taken for delay. Cf. Article 5, Section 12, Chapter 399, Acts of 1957. Code, 1951, Article 5, Section 89, does not enlarge the scope of review. *Madison v. State,* 200 Md. 1, 9, 87 A. 2d 593. Nor does it shift the duty of deciding whether an appeal should be taken by the accused, or his counsel, from the trial court. It merely provides that where the defendant files an oath *in forma pauperis* together with a notice of appeal, after a sentence of death, the trial court shall sign an order directing the entire record to be certified to the Court of Appeals at the expense of the State. Cf. Rules 811, 883 b and 890 of the new Maryland Rules, effective January 1, 1957. The trial judge, in his evident efforts to give the defendant a fair trial in this serious case, unintentionally overlooked some of the necessary procedures to be followed.

> *Judgment reversed, case remanded for a new trial, costs to be paid by the mayor and city council of Baltimore.*

HENDERSON, J., filed the following dissenting opinion.

I am unable to determine from the opinion of this Court just what error was committed by the trial court that requires a reversal of the judgment, and I find none. It is said that the verdict was tentative, but every verdict is tentative in the sense that it remains subject to revision by the trial court prior to sentence, at least within the limits of double jeopardy. I take it to be the duty of the trier of facts to render a verdict promptly while the facts are fresh in mind. Even if there had been a motion to continue the case or hold the case *sub curia,* and there was none, it would have

been well within the trial court's discretion to have overruled it. Actually, counsel for the defense agreed to the rendition of verdict, upon the condition that the court would reconsider and strike it out if the report indicated insanity. The report did not so indicate. There was no breach of condition.

If the verdict had been deferred until after the report was received, it might have been error for the court to consider the report prior to verdict. In *Lowery v. State,* 202 Md. 314, 320, 321, it was argued that it was reversible error for the trial court to read and consider, prior to verdict, a medical report ordered at the request of defense counsel in a capital case. We said it was the better practice and preferable that such a report should not be "read by him at all before or during the trial". However, we found no evidence in that record that the court had read or considered the report prior to verdict. Surely, it cannot be error for the court in the instant case to have followed the approved practice. Counsel for the defense admitted in this Court that he had no ground for a motion for new trial and voluntarily abandoned such a motion.

It is settled law that the trial court may consider the report prior to sentence, even without cross-examination of the reporter. The opinion of this Court holds that it was not reversible error for the trial court not to have called on the accused to make a further statement at the time of sentence. The accused had, of course, taken the stand and made a full statement during the trial. I suppose that this ruling would also apply to defense counsel, although it would appear that counsel was heard on that occasion. If we assume that the trial court should have furnished a copy of the report to defense counsel as soon as it was received, I do not see how this would have helped the defense, since the report was unfavorable. Dr. Guttmacher found that the accused knew the difference between right and wrong and was able to appreciate the consequences of his acts. Under settled law, this is enough to establish criminal responsibility. In substance, the opinion of the expert was that the accused had the requisite mentality, although impaired by alcoholism, to form a criminal intent. The court did, of course, furnish a photo-

static copy of the report to counsel upon the petition filed immediately after sentence. In his letter to counsel, the trial court stated that he had offered to permit counsel to see his copy prior to the sentence. Under these circumstances, I can find no prejudice in the failure to furnish a copy sooner. There was no motion to strike the judgment and sentence on this or any other ground.

This Court has remanded the case for a new trial. On a retrial, even if a plea of insanity is entered, Dr. Guttmacher, if called by the defense, will hardly support the plea on the basis of his report, and it will not be incumbent upon the State to prove sanity. Thus, unless there be newly discovered evidence, of which there is no suggestion or proffer, the report will not be put in evidence prior to verdict, and if considered prior to sentence would presumably carry no more weight than it did in the trial now set aside. In any event, it is settled that we cannot review a sentence.

It is a usual and salutary thing for the trial court to order a report upon the request of defense counsel. If we are now holding that a trial court does so at the risk of a reversal, unless the reporter is put on the stand prior to verdict, even where there is no plea of insanity and the report does not support such a defense, I think the position is quite untenable. I fear that the decision in this case may prove confusing to the trial courts, and have an unfortunate effect in other cases.