Samuele T. STEVENS, Jr., #7372,

v.

**WARDEN, MARYLAND PENITENTIARY.**

Civ. No. 15831.

United States District Court
D. Maryland.

Feb. 15, 1965.

James R. Brown, III, court-appointed, Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen., and Robert F. Sweeney, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

This is a petition for a writ of habeas corpus filed by a State prisoner who was sentenced to 20 years' imprisonment after he was found guilty of robbery with a deadly weapon by a jury in the Criminal Court of Baltimore. Petitioner claims twelve grounds for relief; [1] most of them are frivolous, supported by no evidence whatever, and need not be discussed. Points (1) lack of arrest warrant, (2) inadequacy of representation, and (10) fairness of trial require discussion and a review of the facts.

About 1 a. m. on November 25, 1961, the prosecuting witness, Graham Barnes, a Negro, approached Patrolman Paul McMeckins, a Negro police officer, at Barre and Fremont Streets, and told him that he had just been robbed. Barnes told McMeckins that a Negro with a butcher knife had accosted him in front of a tavern at Fremont and

[1] (1) That he was arrested without a warrant; (2) that his court-appointed counsel was incompetent, and that he did not have the effective assistance of counsel before and during his trial; (3) that the trial court denied him the right "to have witnesses in his behalf"; (4) that the testimony of the State's witnesses was perjured and that the prosecutor knew of its falsity; (5) that the prosecuting witness perjured himself; (6) that the presumption of innocence was never afforded him; (7) that the trial court was prejudiced against him; (8) that the case should have been dismissed because petitioner is innocent of the alleged crime; (9) that there was no proof that the prosecuting witness had been robbed; (10) that petitioner was denied a fair and impartial trial; (11) that he was denied a free copy of the trial transcript; and (12) that the State suppressed vital witnesses and evidence which would have helped petitioner.

Burgundy Streets and had forced him to go behind 617 Fremont Avenue, where, after a scuffle, the man had robbed him of some $47. The officer went with Barnes to the site of the robbery, where he found a butcher knife and Barnes' hat. Barnes told him that he did not know the correct name of his assailant, but knew that he was called "Florida Boy" and that he lived in the 700 block of Eislen Street, some three blocks away. The officer and Barnes went there and, after ringing a couple of bells, were told by the landlady at 715 Eislen Street that "Florida Boy" lived there but that he was not at home. They were preparing to leave when a taxi drove up and petitioner, Samuele T. Stevens, Jr., emerged from the cab, carrying several packages. Barnes immediately identified Stevens as his assailant, and they went into the house. The officer asked Stevens if he had any money with him. Stevens voluntarily produced $33, which he said he had received for some painting he had done that week for a Miss Elsie, last name unknown, in the 2100 block of Etting Street. Barnes offered to drop the charge if Stevens would give him back his $47, but Stevens denied that he had taken the money. Stevens said that he and Barnes had been drinking at 715 Eislen Street earlier that evening, and the landlady confirmed this to the officer. Barnes admitted having had some drinks that evening, but denied that he had ever visited at 715 Eislen Street.

The officer then arrested Stevens, patted him down, and took him to the police station. No search was conducted in connection with the arrest and no statement was taken from Stevens. He was given a preliminary hearing before a judge of the Municipal Court the next morning, at which Barnes and the officer testified; the judge held him for the action of the grand jury, and he was indicted. When he was called for arraignment in the Criminal Court he had no attorney, and the presiding judge appointed an attorney for him. The attorney had been a member of the Bar for only three or four months, but had been a bailiff for Judge Warnken for three years while he attended the University of Maryland Law School. He had already tried a number of cases in the Criminal Court, by reason of the practice then in vogue of appointing former bailiffs to represent defendants in a considerable number of cases shortly after they were admitted to the Bar.

The attorney visited Stevens in jail, heard his story, and was told that the only witnesses Stevens knew of were the landlady and Miss Elsie. The attorney, who was white, attempted unsuccessfully to interview the landlady personally, but left his card and she called him on the telephone. She told him that she would not testify that Barnes had visited with Stevens in her home on the night of the alleged robbery, indicating that it was probably not true. She also told the attorney that there was no use in his looking for Miss Elsie; that she, the landlady, would try to find her, but that if she could not find her the attorney could not. Stevens had also written to the landlady, but she was unsuccessful in finding Miss Elsie, if indeed Miss Elsie ever existed. The attorney visited Stevens a second time in jail and discussed plans for the trial. Stevens insisted upon a jury trial, although the attorney recommended a trial by a judge. The attorney had a third conference with Stevens on a date when the trial was originally scheduled but postponed.

The case was tried before Judge Carter and a jury in the Criminal Court of Baltimore on January 24, 1962. Barnes and the officer testified for the State and were cross-examined by the young attorney, who brought out, inter alia, the fact that the landlady told the officer that Barnes had been drinking with Stevens in her house on the night of the alleged robbery. He elicited from Barnes the fact that Barnes had been in the House of Correction for assaulting an officer at a time when Stevens claimed also to have been in the House of Correction. The State produced an independent witness who identified Stevens as having had a scuffle with another man

in the rear of 617 South Fremont Street at about the time of the alleged robbery. Stevens took the stand, as he and his attorney had agreed he should do. The attorney made a motion for a directed verdict at the close of the State's case but neglected to do so at the conclusion of the entire case. He probably presented some requests for charges to the Judge, but they are not in the record. The charge was legally correct, and no exception was taken to it. The case was argued to the jury, which found Stevens guilty of robbery with a deadly weapon. Stevens told his attorney that he did not wish to make a motion for a new trial, and the Judge promptly proceeded to pronounce sentence. It is not clear from the record whether the Judge failed to give Stevens' counsel an opportunity to argue in mitigation of punishment or whether counsel failed to avail himself of such an opportunity. In either event, no argument in mitigation was made and the Judge did not give Stevens the opportunity to make a statement in his own behalf. The Judge imposed the maximum possible sentence, stating: "The only way I can let you and the others know the attitude of this Court in these matters is to impose the sentence I usually impose. The sentence is twenty years in the Maryland Penitentiary."

The attorney saw Stevens briefly in the lockup after the sentencing and told him of his right to appeal. Stevens promptly filed an appeal in proper person, and a new attorney was appointed to represent him. The judgment was affirmed. Stevens v. State, 230 Md. 47, 185 A.2d 194 (1962). Certiorari was denied January 9, 1963, Stevens v. Maryland, 373 U.S. 940, 83 S.Ct. 1546, 10 L.Ed.2d 695.

Stevens then filed an application under the Maryland Post Conviction Procedure Act, in which he raised the same twelve points that he has now raised in the present petition for a writ of habeas corpus. New counsel was appointed to represent him, and a hearing was held before Judge Byrnes, but it does not appear that any testimony was taken. Judge Byrnes denied the petition.

## Discussion

■ (1) Although petitioner was arrested without a warrant, the arrest was legal because the officer had reasonable grounds to suspect that a felony had been committed and reasonable grounds to believe that Stevens had committed it. Drouin v. State, 222 Md. 271, 160 A.2d 85 (1959). Stevens testified in this Court, but not at his trial, that the officer forced him to empty his pockets, but this Court believes the testimony of the officer that Stevens produced the money voluntarily. The officer had reasonable grounds for the arrest before he asked Stevens to empty his pockets. Nothing else Stevens said or did after his arrest was referred to at his trial.

(2) Counsel was inexperienced but his representation of Stevens was not inadequate.[2]

■ The attorney's failure to move for a judgment of acquittal at the end of the entire case was considered by the Court of Appeals of Maryland on the direct appeal, which found no deprivation of constitutional rights. This Court agrees. The Court of Appeals said:

"* * * Although one's constitutional rights may be violated where representation has been so inadequate as to make a farce of the trial, this Court has held that mere errors in trial tactics, including a failure to renew a motion for a verdict of acquittal, does not amount, per se, to inadequate representation. See Woodell v. State [223 Md. 89, 162 A.2d 468] supra;

2. The present court-appointed counsel for Stevens has conscientiously called the Court's attention to every item which he feels could possibly reflect on the adequacy of the representation; only those considered in the body of the opinion merit discussion.

cf. Snead v. Smyth, 273 F.2d 838 (4th Cir.1962). The record in this case reveals sufficient evidence which, if believed, would support the jury's finding of the appellant's guilt as charged, and hence a request for judgment of acquittal at the close of all the evidence would in all probability have been a fruitless effort." 230 Md. at 49, 185 A.2d at 195.

■ No valid criticism can be made of the attorney for not calling the landlady as a witness. At most, it was a question of trial tactics, and all factors considered this Court agrees with the decision that was made. This point was also considered by the Court of Appeals on the direct appeal.

(10) The trial itself was fair. The only problem which disturbs this Court is the failure of the Judge to accord the defendant an opportunity to make a statement in his own behalf, coupled with the fact that his lawyer was not given or did not avail himself of an opportunity to present an argument in mitigation of punishment.

■ The right of allocution in noncapital cases is not a right guaranteed by the Fifth or Fourteenth Amendments, Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1961). McGrady v. Cunningham, 4 Cir., 296 F.2d 600, 96 A.L.R.2d 1286 (1961), although it is required by the Federal Rules of Criminal Procedure and by statute in several states. See 96 A.L.R. 2d 1292, at 1317. In some cases, however, the failure of a judge to give the defendant or his counsel a reasonable opportunity to present matters in mitigation of sentence, coupled with other circumstances, such as the failure of defendant's counsel to seek such an opportunity, may amount to a deprivation of due process. In the instant case there were matters which might have been urged and considered in mitigation, and there were other matters, particularly the record of the defendant, which would justify some severity. The defendant had insisted upon a jury trial, and the jury's verdict weakened the force of certain arguments which bore on reasonable doubt of guilt as well as on the proper sentence. This Court cannot say that there was such a failure to afford a reasonable opportunity to be heard or such a failure on the part of counsel to seek that opportunity as would amount, under all the circumstances of this case, to a denial of due process. See United States ex rel. Marcial v. Fay, 2 Cir., 267 F.2d 507 (1959); Coates v. Lawrence, 5 Cir., 131 F.2d 110 (1942); cf. Townsend v. Burke, 334 U.S. 736, 737, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).

This is not an isolated case. Similar problems have been presented in a number of cases in the Court of Appeals of Maryland, as well as in previous habeas corpus cases in this Court. In Dutton v. State, 123 Md. 373, pp. 381–384, 91 A. 417 (1914), Chief Judge Boyd discussed the matter at considerable length. In the course of that discussion he said: "We are of the opinion that it is not reversible error, even in capital cases, not to ask the prisoner if he has any reason to give why sentence should not be passed, unless it is apparent that the prisoner was or may have been injured by the omission. But we do strongly recommend and advise that the practice be followed in all cases in which either the death penalty or confinement in penitentiary can be imposed." 123 Md. at 383, 91 A. at 421. In Farrell v. State, 213 Md. 348, 131 A.2d 863 (1957), the Court summarized Judge Boyd's discussion, but held that there was not sufficient showing of prejudice to warrant a new trial. 213 Md. at 354–355, 131 A.2d 863. See also Henwood v. Superintendent, 215 Md. 607, 137 A.2d 210 (1957); Culley v. Warden, 218 Md. 639, 145 A.2d 226 (1958).

The petition for writ of habeas corpus must be and it is hereby denied.