Victor Calvin **WHITAKER**, Appellant,

v.

**WARDEN, MARYLAND PENITEN-TIARY**, Appellee.

No. 10295.

United States Court of Appeals
Fourth Circuit.

Argued Feb. 7, 1966.

Decided June 20, 1966.

Sterling Hutcheson, District Judge, dissented.

John C. Sullivan, Cumberland, Md. (Court-assigned counsel), for appellant.

Jon F. Oster, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and HUTCHESON, District Judge.

BOREMAN, Circuit Judge:

After serving more than ten years of a life sentence for statutory rape, Victor Calvin Whitaker filed his habeas corpus petition in the Maryland District Court in which he charged that he did not re-

2. See note 2 on page 835.

ceive effective assistance of counsel during the proceedings which led to his present incarceration. The lower court, erroneously we think, denied relief.

On the morning of July 16, 1954, Whitaker's wife went to the office of the State's Attorney for Allegany County, Maryland, and complained that Whitaker had engaged in sexual intercourse with her eleven-year-old daughter by a previous marriage. Whitaker was arrested that afternoon and signed a statement admitting the offense.

Shortly after making her complaint, Mrs. Whitaker informed her aunt, Mrs. McElfish, of the events which had transpired. Mr. Manges, an attorney, was then engaged by Mrs. McElfish and looked to her for his fee. The District Court found that Mrs. Whitaker and Mrs. McElfish informed Mr. Manges that they wanted the case disposed of quickly, quietly and with as little notoriety as possible in order to protect the child involved. The subsequent conduct of Whitaker's defense supports the inference that his counsel was obeying instructions.

After accepting employment the attorney first conferred with Mrs. Whitaker in his office, and then proceeded to the office of the State's Attorney. Upon his arrival there he learned that Whitaker had already signed a confession. Manges then talked with Whitaker and was informed that the statement was true and voluntarily given. The State's Attorney's office wished to have the statement notarized but had no one available who could perform that function. Upon request Manges then notarized his client's confession.

Whitaker, presumably upon the advice of counsel, waived indictment by the grand jury and requested an immediate trial before the court upon an information. The trial was held on July 23, 1954, one week following Whitaker's arrest. Counsel tendered a guilty plea in Whitaker's behalf. However, when the trial court expressed its opinion that some evidence should be taken because the case involved a possible death penalty, Manges changed the plea to *nolo contendere*. Testimony, none of it extended, was then taken from the investigating officer who obtained Whitaker's confession, the medical officer who had examined the alleged victim after the complaint had been lodged against Whitaker, and the stepchild herself. Mrs. Whitaker declined to testify against her husband. Counsel's cross-examination was limited to two questions addressed to the investigating officer which were designed to show that the accused had cooperated with the investigating authorities. After the presentation of evidence, counsel spoke at some length in pleading for clemency.

The District Judge, clearly troubled by the highly suspicious circumstances of the case, acknowledged that "there is the smell of foul fish about." However, he concluded that no "fish" could be found. Despite the finding that Mrs. Whitaker and Mrs. McElfish desired a quick, quiet ending to the family tragedy which had occurred, the court found that Manges had not served their interests to the detriment of his client. The basis of this finding was the court's belief that the two women desired also that Whitaker should be dealt with leniently, that Mrs. Whitaker had not understood the gravity of the charge which she had lodged against her husband and that she was subsequently remorseful about lodging the complaint. The court felt that Manges had not been retained to assure that Whitaker would be "quietly put away" but rather to "do what he could" for Whitaker.

While recognizing a lack of vigor in counsel's defense of Whitaker, the court reached the conclusion that there was little more, if anything, which the attorney could have done since the accused had confessed and insisted upon telling the truth about his revolting conduct. However, even if we assume that under the circumstances Manges' defensive efforts were necessarily restricted to entering a *nolo contendere* plea and urging leniency, our study of the record in the case convinces us that the ex-

pressed interest of Mrs. Whitaker and Mrs. McElfish in a speedy, unpublicized disposition of the statutory rape charge and in protecting Mrs. Whitaker's daughter may have materially influenced the nature and extent of counsel's efforts to present a defense.

At the hearing before the District Court, Mr. Manges testified as follows:

"* * * Here we had a girl who was only eleven years old, but the doctor had testified was not a virgin.

"I had gone into her background and she, apparently, had been going with boys for quite some time."

It is true that there was evidence before the trial court of sexual relations between Whitaker and his stepdaughter on one occasion prior to the act which was the basis of the prosecution. Mr. Manges testified before the District Court he feared that a vigorous defense might arouse the prosecution to present evidence of yet other similar offenses. Nevertheless, the statement of counsel quoted above leaves little to the imagination. Taken in context, the reasonable inference to be drawn therefrom is that, during his investigation of the case, he had uncovered evidence of the victim's sexual promiscuity.

█ Manges' testimony below indicates that he had disclosed his information to the trial court. He stated:

"* * * If I recall, I stressed the fact that the evidence of the doctor indicated that this child, even though eleven, had not been a virgin, I went into that very thoroughly."

However, the transcript of the trial discloses no mention of this evidence or information in pleading for leniency. That such evidence could have been properly received by the trial court would not seem open to question. In Murphy v. States, 184 Md. 70, 40 A.2d 239 (1944), the court stated:

"The rule is well settled that where the court must determine the punish-

ment to be imposed, either on the finding of the jury or on a plea of guilty, it is proper for the court to hear evidence, by affidavit or otherwise, in aggravation or mitigation of punishment." 184 Md. at 82, 40 A.2d at 244.

See also the more recent case of Farrell v. State, 213 Md. 348, 355, 131 A.2d 863, 867 (1956).

Moreover, we think that there can be no doubt that evidence of promiscuous sexual misbehavior on the part of the victim would have been relevant to a determination of the proper sentence to be imposed. While the crime is revolting and reprehensible under any circumstances, it might be considered less so if the girl involved was not an innocent child, but rather one who was sexually wise and experienced far beyond her years. In the instant case, Whitaker desperately needed the benefit which might derive from the disclosure of any mitigating factors. His crime was aggravated by the girl's tender age and her familial relationship with him. Yet, counsel appears to have made no attempt whatsoever to apprise the court of the girl's background, which his testimony strongly indicates he knew to be bad. Had he brought this information to the court's attention, Whitaker's punishment might have been less severe.[1] His statement that he stressed such evidence to the trial court, for which we find no support in the trial record, supports the view that he was aware that Whitaker's best interests dictated that such evidence be presented. His failure in this particular is explainable only in terms of the desire and concern of Mrs. McElfish and Mrs. Whitaker that publicity should be minimized and the child protected. The inference, fairly to be drawn from these circumstances, is that it was clear to counsel that he should strive to help Whitaker, but only to the extent consistent with the child's welfare.

█ While the conclusion that counsel was not single-mindedly devoted to

[1] The punishment might have been as little as imprisonment for a term of 18 months. See Md.Code Ann. art. 27, § 461 (1957).

Whitaker's defense is based primarily upon representation afforded immediately after conviction, we think the conviction should be set aside. We cannot say that representation of Whitaker prior to his conviction was unaffected by the circumstances of counsel's employment and the admonitions of Mrs. Whitaker and Mrs. McElfish. All that we need determine is that Manges was serving an interest or interests which conflicted with that of Whitaker; we need not delineate any specific prejudice to Whitaker flowing from his representation. See Glasser v. United States, 315 U.S. 60, 75–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Sawyer v. Brough, 358 F.2d 70 (4 Cir. 1966).

Accordingly, the case is remanded to the District Court with instructions that it grant Whitaker's petition for habeas corpus relief unless the state, within a reasonable time, makes provision to afford him a new trial.

Reversed and remanded.

STERLING HUTCHESON, District Judge (dissenting):

I would affirm the judgment of the District Court.

The majority bases its conclusions upon the statement:

"All we need to determine is that Manges was serving an interest or interests which conflicted with that of Whitaker; we need not delineate any specific prejudice to Whitaker flowing from his representation".

My view is that issuance of the writ of habeas corpus is proper only when it is shown that the petitioner has been prejudiced by the denial of a legal right. This may be merely a restatement of the principle in simpler language.

In any event, the thought does not appear in conflict with Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 nor with Sawyer v. Brough, 4 Cir., 358 F.2d 70. Certainly the facts may be distinguished.

My opinion is that Manges has neither served an interest which conflicted with the interest of Whitaker nor has Whitak-er been denied any legal right. A brief review of the salient facts leads to this conclusion.

Mrs. Whitaker, understandably enraged by the discovery that her husband had engaged in sexual intercourse with her 11 year old daughter by a former marriage, hastened to the office of the State Attorney, where she filed a complaint. Whitaker was taken into custody and placed in jail. Mrs. Whitaker then turned to her aunt, Mrs. McElfish, for advice. Naturally, the effect upon the young girl was the first consideration of the aunt in this domestic tragedy. The two women then sought the counsel of Mr. Manges, a member of the Maryland Bar, with whom they were acquainted and who had previously represented them in some legal affairs. In addition to his experience as a practitioner, Mr. Manges had theretofore served as official reporter for the same court before which the charges against Whitaker were heard.

To the consternation of Mrs. Whitaker, Mr. Manges informed her that the law provided a possible death penalty upon conviction of such offense. Mrs. Whitaker had supposed the case would be within the jurisdiction of the juvenile court. She thereupon urged Manges to do everything he could for her husband and daughter and to act quickly and with as little publicity as possible.

Upon visiting Whitaker, which he did at once, Manges was informed that he had given the police a written statement admitting his guilt. Upon examining that statement he found that Whitaker had informed the police that he had committed not only the act upon which the charge was based but had said that the illicit relations with his stepdaughter had first taken place about a year earlier. While he did not specify the number of such occasions, in reply to the question "When would these sex acts usually occur?" Whitaker replied "While the other children were out of the house, usually at the playground, or my wife would have them with her visiting her daddy." He went into further detail concerning the non use of contraceptives and related

that he gave her a nickel once in a while on these occasions and stated that he was sober when the acts occurred. He also said he told her not to tell anyone.

Clearly this was a case in which the rights of all concerned would be best served by an early hearing with as little publicity as possible and with the least permissible development of circumstantial details. This peculiarly applied to Whitaker. Damage done the reputation of the girl was by publicity of the acts. Information as to the previous acts might have aggravated the damage somewhat but it would have been negligible compared to the damage to Whitaker. An exploration of this past conduct could only have been highly damaging to him. The interrogation by the police, while sufficiently searching, was somewhat restrained and did not relate to details concerning the prior acts except as here outlined.

At least by implication, Manges is criticized for not attacking the confession, for waiving indictment and requesting an early trial upon information. Upon what basis could he have attacked the confession? What would have been gained by a continuance? The record discloses no suggested answers to these questions.

He is criticized for failing to lay greater emphasis upon the medical testimony concerning prior experience of the girl. Whitaker's statement contains ample explanation of her experience at least in part, beginning when she was 10 years of age. It is said that evidence of promiscuous sexual misbehavior on her part might have mitigated in Whitaker's favor. I find it highly unlikely that a 10 year old girl was the seducer in this case.

The interests of both parties were similar and called for an early disposition of case with little publicity and the avoidance of disclosure of details concerning the relations of this couple over the past year.

The fact that Manges notarized Whitaker's statement after being assured by Whitaker that it was true was perhaps a *pro forma* error in judgment but it signifies nothing. Is it to be said that counsel is derelict in his duty because he failed to suppress a confession based upon truth? I deem it unnecessary to discuss the post conviction efforts of Manges in endeavouring to obtain leniency for Whitaker. As a result of his efforts, the court was informed that Mrs. Whitaker had expressed her willingness to resume the marital relationship if probation were granted; that his employer would continue to hire him; and at Manges' request others, including a relative of the family who was a minister, interceded with the judge in Whitaker's behalf. It is sufficient to say that these efforts exceeded those observed in many cases.

Nor should it be necessary to point out that this court is without legal power to reduce a sentence which, as in this case, appears unduly harsh.

While perhaps unrelated to the issue of proper representation at the trial, the staleness of this claim deserves comment. It has been twelve years since the trial. The only suggestion concerning additional facts is that a further probe be conducted to ascertain whether this young woman was, 12 or 13 years ago, guilty of promiscuous sexual misbehavior, she then being 10 or 11 years of age. This impresses me as a case in which her present rights are worthy of consideration.

Of course, it is not improbable that the State of Maryland may elect not to retry the case. However, this is merely more speculation. Certainly it is a determination in which this court has no part.

In view of the foregoing considerations, I find myself unable to join in a reversal of the judges of the State and Federal Courts who have carefully reviewed the case.