COMMONWEALTH *vs.* FILIBERTO JIMINEZ. No. 88-P-294. June 20, 1989. *Practice, Criminal*, Plea. *Constitutional Law*, Assistance of counsel. *Attorney at Law*, Conflict of interest. *Conflict of Interest*.

In August, 1985, Filiberto Jiminez was charged in nine indictments with rapes and abuse (without force) of a child under sixteen (G. L. c. 265, § 23). The named victim was the defendant's stepdaughter, fourteen years old at the time. The defendant pleaded not guilty, but on November 21, 1985, he withdrew this plea and pleaded guilty. At the session in open court, he was represented by counsel, Mr. Shawn W. Mansfield. The

proceeding was conducted by a judge of the Superior Court with attention to the rule (Mass.R.Crim.P. 12[c], 378 Mass. 867 [1979, before amendment effective in 1987]) and with a conspicuous effort to make sure that the defendant understood what was at stake and was acting voluntarily.[1] Recommendations for sentence were not made by either side at the time, nor was sentence rendered. Consistently with a form executed by the defendant, his attorney, and the prosecutor, and with Mass.R.Crim.P. 12(c)(2)(A), as in effect at the time, the judge undertook to permit the defendant to withdraw the guilty plea if he, the judge, should indicate he was going to exceed the Commonwealth's recommendation. At the sentencing hearing on December 3, 1985, no joint recommendation appeared. The judge pronounced concurrent sentences of twelve to fifteen years at M.C.I., Cedar Junction, to be served after satisfaction of a parole violation for which the defendant was then incarcerated and on which he then nominally had fourteen-plus years remaining to be served. This improved on the Commonwealth's recommendation of fifteen to twenty years.[2] Further details of the guilty plea proceeding are set out below.

On February 12, 1987, the defendant moved to withdraw his guilty plea and for a new trial, on the intertwined grounds that Mr. Mansfield was involved in a conflict of interest impairing his representation of the defendant on the plea and that he had given the defendant ineffective assistance. At the hearing on December 9, 1987, at which the defendant was represented by new counsel appointed by the court, Mr. Mansfield and the defendant were called and gave testimony. The judge (who had presided at the guilty plea and at sentencing) denied the application, setting out his views in a "Memorandum and Order."[3] The defendant appeals.

1. *As to conflict of interest regarding the guilty plea:* Mr. Mansfield had been retained by the defendant's wife, Judith, who was the victim's mother. The defendant knew this.[4] Mr. Mansfield told the defendant that he was representing him (and no other), and the judge accepted that that was the fact. There is nothing intrinsically wrong in counsel for a criminal defendant being retained and compensated by a third party, provided the defendant understands and acquiesces in the arrangement. See S.J.C. Rule 3:07, DR 5-107, 382 Mass. 782 (1981); A.B.A. *Standards for Criminal Justice* § 4-3.5(c), commentary at 4.43-4.44 (2d ed. 1980). An impermissible conflict

---

[1] For instance, the judge warned the defendant of a possible life sentence under the statute. The defendant was warned to the same effect by his counsel.

[2] In fact the defendant served time under the parole violation until February 17, 1987, when he commenced serving the present concurrent rape sentences.

[3] For the respect to be accorded on appeal to the views of the judge who conducted this hearing, see *Commonwealth* v. *Perry*, 389 Mass. 464, 466 (1983). And here, as noted, the judge had the advantage of being familiar with the matter from the start. See *Commonwealth* v. *Brown*, 378 Mass. 165, 172 (1979).

[4] He knew also that he could ask for counsel from the Committee for Public Counsel Services, as he had been represented by such counsel when he was arraigned.

may arise when counsel's own interests or those of the third party confound counsel's independent judgment, see *Commonwealth* v. *Burbank, ante* 97, 103 (1989), and the burden would be on the defendant to prove this. See *Commonwealth* v. *Shraiar*, 397 Mass. 16, 20 (1986).

Questions may arise as to the particular purpose and putative effect of the third party retainer. Conceivably, Judith could be conniving with Mr. Mansfield to have him so conduct himself as to secure the worst result for the defendant and thus to avenge the wrong done to the daughter. There is no suggestion of any such thing. On the other hand, Judith conceivably might be using Mr. Mansfield, perhaps through the lure of the fee, to coerce or cajole the defendant into pleading guilty, when there was serious doubt whether he was guilty, as a means of saving the victim the trauma of testifying in court. The actual situation was different. All — Judith, the defendant, and Mr. Mansfield — appeared to recognize that the defendant in all likelihood would be found guilty as charged if he went to trial: the victim had given a statement in circumstantial detail to the police (and of course the defendant subsequently admitted his guilt). In the circumstances, the best course, evidently understood and desired by the defendant as well as Judith, was a guilty plea with a prayer for leniency.[5] It was also a motive for bypassing trial, shared by both the defendant and Judith, that the victim should not have to testify.[6] This mix of considerations prevailed.

The defendant was not coerced or cajoled by Mr. Mansfield (or Judith). Mr. Mansfield explained the situation to the defendant but did not advise him to plead guilty: he left the final decision to the defendant, who seems to have been quite competent. The defendant now tries to make something of the nature of the fee: $1,000 through trial or plea, of which $500 was paid at the start. The suggestion is that the other $500 was withheld to exact obedience from Mr. Mansfield, but, as indicated, no sinister pattern emerges.[7]

Situations somewhat resembling the present, in which relatives of defendants retained counsel for them, will be found in *Kelley* v. *Alabama*, 636 F.2d 1082, 1084 (5th Cir. 1981); *Bresnahan* v. *People*, 175 Colo. 286, 294-295 (1971), habeas corpus denied, *Bresnahan* v. *Patterson*, 352

---

[5] Before sentencing Judith and the victim herself wrote to the judge requesting leniency. Because the interests of the defendant were in harmony with the wife's, conflict did not exist, and there is no question of waiver of a conflict. Compare *Commonwealth* v. *Hodge*, 386 Mass. 165, 170 (1982).

[6] The defendant was so far concerned to avoid public shame or dishonor to the family that he asked the judge before taking his guilty plea to clear the court so that onlookers would not hear the victim's statement to the police or the police reports. This the judge refused to do, but by consent he received these papers and did not have them read out.

We observe here that in fixing sentence, a judge may give favorable consideration to the fact that the defendant has avoided public trial in order to prevent embarrassment of the victim. See A.B.A. Standards, *supra* § 14-1.8(a)(iii).

[7] Mr. Mansfield expected to receive the second installment but it was not paid.

F. Supp. 1180, 1189 (D.Colo. 1973) (*Patterson* distinguishes *Whittaker* v. *Warden*, 362 F.2d 838 [4th Cir. 1966]); *Commonwealth* v. *Hazen*, 315 Pa. Super. 557, 563-564 (1983).

2. As to ineffective assistance of counsel at guilty plea: The defendant contends that Mr. Mansfield might have done better for him if he had thought and tried harder. It is not indicated that there was ever a chance for a joint recommendation of sentence, or any advantage in delaying the guilty plea until the Commonwealth had recommended a sentence. The Commonwealth withheld a recommendation to await probation records when it learned the defendant had previously been convicted of a similar offense against a mentally retarded girl. The Commonwealth was threatening to bring fresh second-offender indictments against the defendant, which would mean a statutory minimum sentence of five years' imprisonment at M.C.I., Cedar Junction (G. L. c. 265, § 23), and limits on parole. See G. L. c. 127, § 133. Finally, the Commonwealth receded from seeking second-offender indictments, but its fifteen to twenty year proposal was still to Cedar Junction. The court reduced to twelve to fifteen years after consulting the sentencing guidelines. Mr. Mansfield urged on the judge that he recommend incarceration at North Central Correctional Center in Gardner, but the plea failed. The Appellate Division left the sentence unchanged. There was no showing that it was because of a lapse of reasonably proficient advocacy that the defendant was deprived of a better disposition. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The judge evidently rejected contentions that Mr. Mansfield spent insufficient time with the defendant; failed seasonably to read and to have the defendant read certain papers; misled the defendant by assurances that if he pleaded guilty his sentence would not exceed three to five years, etc. We find no fault with the judge's decision.[8]

To conclude: A retainer arrangement such as that at bar understandably raises questions of a possible breach of ethical standards. Upon careful scrutiny, we think no breach has occurred here.

> *Order denying motion for new*
> *trial affirmed.*
> *Order denying motion for*
> *leave to withdraw guilty plea*
> *affirmed.*

*Irene T. Soffer* for the defendant.
*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

---

[8] The defendant through his newly retained appellate counsel complains of alleged ineffectiveness of the attorney who represented him on the motion to withdraw the guilty plea and for a new trial, whose denial below is the subject of this appeal. The foregoing opinion shows how difficult was the attorney's task and how slim was the prospect of success despite any efforts.